UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 01-40222
SUMMARY CALENDAR

_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JOSE ALBERTO CAVAZOS,

Defendant - Appellant.

_____

Appeal from the United States District Court for the
Southern District of Texas, Laredo
_____

**April 12, 2002**

Before REYNALDO G. GARZA, JOLLY, and WIENER, Circuit Judges.

REYNALDO G. GARZA, Circuit Judge:

In this appeal, we review a criminal defendant's conviction for possession of a firearm by a

convicted felon, in violation of 18 U.S.C. § 922(g).  For the following reasons, we affirm.

I

On September 8, 1999, the DEA received a tip from a confidential informant indicating that

an undetermined amount of cocaine had been transported to a residence at 501 San Pedro Street in

Laredo, Texas.  Later that day, the agency began conducting surveillance of the residence, during

which law enforcement officers witnessed approximately twenty to twenty-five cars arrive and

depart from the residence in a two and one-half hour span. According to the agents, such quick arrivals and departures were common among narcotics traffickers. Further, the agents believed that a Cadillac parked in front of the residence belonged to one Pedro Gaytan-Elias, a reputed drug dealer with prior arrests.

At approximately 10 p.m., the DEA submitted an affidavit containing the above information to a federal magistrate and requested a search warrant for the residence. The magistrate issued the warrant after midnight on September 9, and at approximately 1 a.m. federal agents and local law enforcement officers executed the warrant on 501 San Pedro Street.

It was ultimately discovered that the warrant affidavit contained erroneous or false information. Namely, the Cadillac parked in front of the residence actually belonged to Pedro Gaytan, Jr., a computer manager for the local schools with no prior arrests.

Prior to the execution of the warrant, Defendant Jose Alberto Cavazos and two others left the residence in a truck. The truck approached a vehicle containing two of the officers who were surveilling the residence. According to the officers, the truck pulled up closely to the officers' vehicle, and its occupants peered at the officers inside. When the truck pulled away, the officers performed a U-turn to follow. The defendant's truck then made is own U-turn and the two vehicles were approaching each other. The truck then crossed over into the officers' lane, creating a sort of stand off. Both vehicles stopped, and the officers exited their vehicle with their guns drawn. When Cavazos got out of the truck, the officers patted him down. Neither he nor his companions in the truck had a firearm on his person. Cavazos was then taken back to 501 San Pedro Street, where agents and officers executed the search warrant.

Once at the residence, officers handcuffed Cavazos and informed him of the search warrant

and his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). No drugs were found at the residence, and when agents questioned Cavazos about drugs, he denied any knowledge of them. The agents, however, did find two firearms and ammunition in the house. In response to questioning about the firearms, Cavazos admitted owning them. Agents also determined that Cavazos lived at the residence and was a convicted felon.

Cavazos moved to suppress the firearms and the inculpatory statements that he made during the search. After several hearings, the district court denied this motion. Following a bench trial on stipulated facts, the district court found Cavazos guilty of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g). Cavazos then filed a post-verdict motion for judgment of acquittal, arguing that the evidence was insufficient to prove that his possession of the firearm had affected interstate commerce. The district court denied this motion as well.

II

When reviewing a district court's ruling on a motion to suppress, we review its findings of fact for clear error and its legal conclusions de novo. *See United States v. Davis*, 226 F.3d 346, 350 (5th Cir. 2000), *cert. denied*, *Davis v. United States*, 531 U.S. 1181 (2001). Cavazos first challenges the sufficiency of the search warrant, a legal question reviewed de novo. *See id*.

"The bulwark of Fourth Amendment protection" is its requirement that "police obtain a warrant from a neutral and disinterested magistrate before embarking upon a search." *Franks v. Delaware*, 438 U.S. 154, 164 (1978). The Amendment further provides that "no warrants shall issue, but upon probable cause, supported by oath or affirmation." U.S. Const. amend. IV. Evidence obtained in violation of the Fourth Amendment is to be excluded in a criminal proceeding against the victim of the violation. *See United States v. Calandra*, 414 U.S. 338, 347 (1974);

*United States v. Paige*, 136 F.3d 1012, 1017 (5th Cir. 1998); *United States v. Buchanan*, 70 F.3d 818 (5th Cir. 1996).

Where a search warrant is involved, this Court employs a two-step process for reviewing a district court's denial of a motion to suppress. *See United States v. Cherna*, 184 F.3d 403, 407 (5th Cir. 1999). First, we determine whether the good-faith exception to the exclusionary rule applies. *See id*. The good-faith exception provides that where probable cause for a search warrant is founded on incorrect information, but the officer's reliance upon the information's truth was objectively reasonable, the evidence obtained from the search will not be excluded. *See United States v. Leon*, 468 U.S. 897, 919–20 (1984). If the exception applies, our analysis ends, and the district court's decision not to suppress is affirmed. *See Cherna*, 184 F.3d at 407. If the exception does not apply, we then proceed to the second step in the analysis and determine whether the magistrate had a substantial basis for finding probable cause. *See id*.; *United States v. Pena-Rodriguez*, 110 F.3d 1120, 1129 (5th Cir. 1997). The reasonableness of an officer's reliance upon a search warrant is a legal question, which we review de novo, *see Davis*, 226 F.3d at 350, but it is important to remember that, "[i]f the good-faith exception applies, we need not reach the question of probable cause." *Cherna*, 184 F.3d at 407.

The good-faith exception to the exclusionary rule does not apply if the warrant affidavit contains a false statement that was made intentionally or with reckless disregard for its truth. *See Franks v. Delaware*, 438 U.S. 154, 155–56 (1978). If an allegation of intentional falsity or a reckless disregard for the truth is "established by the defendant by a preponderance of the evidence," the we must then excise the offensive language from the affidavit and determine whether the remaining portion would have established the necessary probable cause. *See Franks*,

438 U.S. at 156–57; *United States v. Alvarez*, 127 F.3d 372, 374 (5th Cir. 1997). Note that the initial burden here is upon the defendant to prove that false information was given intentionally or recklessly. *See United States v. Wake*, 948 F.2d 1422, 1428–29 (5th Cir. 1991) (discussing the "defendant's burden in challenging the truthfulness of factual statements made in an affidavit supporting a warrant"). If the defendant fails to meet his burden, or if the affidavit would have sufficiently provided probable cause without the false information, the warrant did not violate the Fourth Amendment and the evidence should not have been excluded.

In the instant case, the false information was the identity of the Cadillac's true owner. After several hearings on the matter, the district court found no evidence to suggest that the officers had deliberately or recklessly provided the false information. Having made these findings, the good-faith exception would have allowed the court to consider the entire affidavit, and the analysis should have ended there. The district court, however, went on to conclude that, had the false information been excised, the remaining portion of the affidavit would have established probable cause. Therefore, it would be prudent for us to review this conclusion as well.

A probable cause determination is a "practical, common-sense decision as to whether, given all the circumstances set forth in the affidavit, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Byrd*, 31 F.3d 1329, 1340 (5th Cir. 1994). Without the information about the Cadillac, the affidavit contained the confidential informant's tip and the suspicious activity observed by agents during the surveillance. The district court held that neither of these pieces of information, standing alone, would have been enough to establish probable cause, but that together, they were sufficient. *See e.g.*, *United States v. Carillo-Morales*, 27 F.3d 1054, 1062 (5th Cir. 1994) (finding probable cause based on a

confidential informant's tip accompanied by suspicious activity); *United States v. Bass*, 551 F.2d 962, 963–64 (5th Cir. 1977) (same).

Cavazos argues that the confidential informant's tip should also be excised from the warrant affidavit because the facts conveyed by the informant's tip were contrary to the facts set forth in the affidavit. The affidavit stated that the informant witnessed approximately ten illegal aliens transport several bundles of cocaine by hand into the United States and then load the cocaine into a cream colored Chevrolet Suburban. The affidavit also states that the informant witnessed the Suburban transport the cocaine to the residence located at 501 San Pedro Street. Cavazos argues that these statements are false because the informant never actually saw the cocaine in the house or in the car. This argument misrepresents the affidavit and is therefore unpersuasive. Nowhere in the affidavit is there a claim that the informant actually saw the cocaine. Rather, the informant's belief that the substance he saw was cocaine was based in the informant's years of experience in the area of drug trafficking.

The district court properly considered the confidential informant's tip when determining whether the warrant affidavit established probable cause. Furthermore, the district court did not err when in found that the informant's tip and the suspicious behavior observed at the residence, taken together, established probable cause sufficient to justify the search warrant.

Cavazos next challenges the admission of the inculpatory statements he made during his detention at 501 San Pedro Street. He does not challenge the initial stop and frisk. Rather, he contends that once the agents had determined that Cavazos had no weapons, they no longer had a justification to detain him. Therefore, Cavazos argues that this continued detention violated his Fourth Amendment rights and that the inculpatory statements he made during that detention

-6-

should have been excluded as fruit of the poisonous tree.

The rule that warrantless detentions must be based on probable cause is not without exceptions. In *Michigan v. Summers*, 452 U.S. 692 (1981), the Supreme Court recognized that certain seizures are so minimally intrusive upon the rights of an individual and at the same time so necessary to achieve substantial law enforcement interests that they may be made on something less than probable cause. *See id*. at 699. According to the Court, a warrant to search a residence implies the limited authority to detain occupants of the residence while the search is being conducted. *See id*. at 705. The law enforcement interests served by such a detention are the prevention of harm to officers and residents, the prevention of flight, and the orderly completion of the search, which is facilitated by the presence of the occupants. *Id*. at 702.

In the instant case, federal agents and local law enforcement officers were executing a valid warrant to search 501 San Pedro Street. The officers did not know that Cavazos was a resident of the premises until after the search began, but they did know that he was an occupant, and it is the connection of an occupant to the home being searched that gives the officers an "easily identifiable and certain basis for determining that suspicion of criminal activity justifies a detention of that occupant." *Id*. at 703–04. Further, when Cavazos approached the police car and peered at the officers, it would be reasonable to think that he was performing a type of counter-surveillance, after which he drove his truck toward the officers' vehicle in a threatening manner. This conduct warranted the belief that Cavazos would have fled or alerted the other occupants of the residence about the agents nearby if he were released immediately after the stop and frisk. Such concerns justified his detention during the search of 501 San Pedro.

Cavazos attempts to distinguish the instant case from *Summers* on the basis of geographic

proximity. Whereas the defendant in *Summers* had just exited the house and was on the front steps when the police detained him, *id*. at 693, Cavazos was two blocks away from the residence. Although this Court has yet to deal with this question directly, we have held that the validity of the detention depends on "both the character of the official intrusion and its justification." *Summers*, 452 U.S. at 700; *Heitschmidt v. City of Houston*, 161 F.3d 834, 837 (5th Cir. 1998). In the instant case, Carvazos's behavior immediately before the detention and his connection to the house—as either occupant or resident—provided the agents with ample justification to detain him during the search.

Cavazos points to several cases from other jurisdictions to argue that the two blocks between him and his residence should foreclose the application of *Summers*. Nevertheless, the courts' refusals to apply *Summers* in the cases cited by Cavazos did not turn on the defendants' distance from the scenes of the searches. Each required something more. *See e.g.*, *United States v. Edwards*, 103 F.3d 90, 93–94 (10th Cir. 1996) (refusing to apply *Summers* to a defendant who was seized three blocks away from the search and police had no reason to believe that defendant would flee); *United States v. Sherrill*, 27 F.3d 344, 346 (8th Cir. 1994) (refusing to apply *Summers* to a defendant who was seized one block away and police had "no interest in preventing flight or minimizing the search's risk because [the defendant] had left the area of the search and was unaware of the warrant.").

The critical distinction between the instant case and those cited by Cavazos is Cavazos's behavior immediately prior to his seizure. The police in *Edwards* and *Sherrill* had no reason to believe that the defendants in those cases presented any risk of flight. They offered no risk compromising the searches by warning the remaining occupants of the places to be searched. The

defendants in *Edwards* and *Sherrill* did drive not closely to a surveilling police car in an apparent attempt to conduct counter-surveillance, nor did they did drive vehicles toward law enforcement officers in a threatening manner.

The proximity between an occupant of a residence and the residence itself may be relevant in deciding whether to apply *Summers*, but it is by no means controlling. As one court has flatly stated, "*Summers* does not impose upon police a duty based on geographic proximity (i.e., defendant must be detained while still on his premises)." *United States v. Chochran*, 939 F.2d 337, 339 (6th Cir. 1991). Cavazos places heavy emphasis on the fact that he was unaware of the search warrant, but his actions immediately prior to his detention warranted the officers' belief that Cavazos presented a threat to the search. Accordingly, the inculpatory statements made during this temporary detention were not fruit of the poisonous tree, and the district court did not err in admitting them.[1]

### III

Cavazos also argues that 18 U.S.C. § 922(g) is unconstitutional in that evidence of intrastate possession of a firearm manufactured in another state, standing alone, is insufficient to establish a sufficient interstate commerce nexus under the Commerce Clause. This Court has repeatedly held that evidence that a firearm has traveled interstate at some point in the past is sufficient to support a conviction under § 922(g), even if the defendant possessed the firearm

---

[1] The district court also found that these inculpatory statements were preceded by warnings under *Miranda v. Arizona*, 384 U.S. 436 (1966). Although Cavazos seems to contest this finding in his Statement of the Facts, Appellant's Br. at 9, it is unclear whether Cavazos means this to be a formal issue on appeal. *See* Fed. R. App. P. 28(a)(9); *L & A Contracting Co. v. Southern Concrete Services*, 17 F.3d 106, 113 (5th Cir. 1994) (Inadequately briefed issues are deemed waived.).

entirely intrastate. *See e.g.*, *United States v. Daugherty*, 264 F.3d 513, 518 (5th Cir. 2001), *cert. denied*, 112 S. Ct. 1113 (2002) (A sufficient interstate commerce nexus exists where the weapon was manufactured in Egypt, imported through Tennessee, but possessed in Texas); *United States v. Kuban*, 94 F.3d 971 (5th Cir. 1996) (same where the weapon was manufactured in Belgium but possessed in Texas); *United States v. Rawls*, 85 F.3d 240 (5th Cir. 1996) (same where the weapon was manufactured in Massachusetts but possessed in Texas.). In the present case, Cavazos stipulated that the firearm was manufactured in California. Thus, there is a sufficient interstate commerce nexus to support Cavazos's conviction under § 922(g).

Cavazos contends that two recent Supreme Court decisions warrant a different result, namely *United States v. Morrison*, 529 U.S. 598 (2000), and *Jones v. United States*, 529 U.S. 848 (2000). This Court, however, has already rejected this contention and held that "[n]either *Jones* nor *Morrison* affects or undermines the constitutionality of [ ]§ 922(g)." *Daugherty*, 264 F.3d at 518.

IV

For the foregoing reasons, the judgment of the district court is AFFIRMED.