IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 9, 2009

Charles R. Fulbruge III
Clerk

No. 07-50822

UNITED STATES OF AMERICA

Plaintiff - Appellee

v.

RUDY NARANJO

Defendant - Appellant

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:05-CR-134-1

Before JOLLY, DAVIS, and DeMOSS, Circuit Judges.

PER CURIAM:[*]

A jury convicted Rudy Naranjo of four counts of conspiracy to distribute and possess cocaine and cocaine base, and one count of using a semi-automatic weapon in furtherance of a drug trafficking crime. Naranjo appeals his conviction. He contends that the district court erred in denying: his motion to suppress; his request that the Government produce debriefing notes from its interviews with cooperating witnesses; his request for a jury instruction on third-party guilt; and his motion for a mistrial after a witness referred to his

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

prior incarceration. He further argues that the Government used perjured testimony against him and impermissibly commented on his failure to testify. For the reasons stated below, we find no error and therefore affirm all convictions.

I.

The facts of this case necessarily begin with Frank Mora, the Government's informant. In January 2005, Mora was a state fugitive. On January 28, he called DEA Agent Nancy Sanford, whom he knew, and told her that a black truck traveling from San Antonio to Houston was carrying cocaine and marijuana. Agent Sanford informed officers in Welder, Texas, who identified the black truck and, because it was speeding, stopped it. They arrested the driver, Robert Torres, because he had no liability insurance. A search of the truck turned up 11 kilograms of cocaine and more than 68 pounds of marijuana.

Meanwhile, Sergeant Robert Perez of the San Antonio Police Department received a call from a confidential informant who told him where Mora was hiding. Officers then located and arrested Mora, who told them he wanted to talk. Sergeant Perez and Detective Val Lopez interviewed Mora, and he repeated the information he had previously given Agent Sanford. He also told them that Rudy Naranjo and Juan Losoya were trafficking large amounts of narcotics, and that he had seen bundles of narcotics at their apartments at the Enclaves apartment complex in San Antonio.

Sergeant Perez knew from his own experience that Naranjo and Losoya were involved in drug trafficking and, because Mora's information was so detailed, he believed it to be credible. He confirmed that one of the apartments was leased to Donna Hull, Naranjo's common-law wife. On the basis of his prior knowledge and Mora's information, Sergeant Perez prepared an affidavit and obtained a warrant to search apartments 905 and 1601 and a garage.

In apartment 1601, officers found cocaine, clear plastic wrappings with cocaine residue, a money-counting machine, loose marijuana, a safe with $5,000 cash, and an SKS assault rifle with thirty live rounds in it. They also found evidence establishing that Naranjo lived there with Donna Hull, their baby daughter, and Jason Martinez, his nephew. Officers found a hotel receipt and a prescription pill bottle with Naranjo's name on it, documents related to Bad Boy Audio, Naranjo's business, and an application for Medicaid for Naranjo's daughter.

In apartment 905, officers found cocaine and a money-counting machine, as well as a security badge, handcuffs, a hat labeled "narcotics officer," and a bullet-proof vest. Evidence established that Losoya lived in apartment 905.

In the garage, officers found 7.6 kilograms of bundled cocaine and 728 grams of bagged cocaine base, also known as crack. There was also a one-gallon plastic bucket holding approximately 1,010 grams of loose cocaine, and a plastic bag holding a brick of cocaine weighing 1,048 grams. Fingerprints lifted from the bucket matched Losoya's. Documents found in the garage bore Naranjo's and Bad Boy Audio's names.

A title search of the black truck eventually linked it to Naranjo. A man identified as Naranjo's nephew later visited Torres, the truck's driver, while he was in jail. That man drove a sedan that was registered to Donna Hull.

Naranjo was indicted in March 2005 on four counts of conspiracy to distribute and possess cocaine and cocaine base, and one count of using, carrying, and possessing a semi-automatic assault weapon in furtherance of a drug trafficking crime.[1]

---

[1] Specifically, Naranjo was charged with:

Count 1: Conspiracy to distribute and possess with intent to distribute 5 kilograms or more of cocaine. 28 U.S.C. §§ 841(a)(1), 841 (b)(1)(A), & 846.

Count 2: Conspiracy to distribute and possess with intent to distribute 50 grams or

At trial, the Government offered the testimony of four cooperating witnesses. Israel Soto testified that he had purchased cocaine from Naranjo on two separate occasions, and that Naranjo had showed him his AK 47 assault rifle. Mario Fuentes, who was present when Naranjo showed Soto his gun, corroborated Soto's testimony. Pedro Ramos testified that he once lent $20,000 to Naranjo, who paid him back in cocaine. Ramos said that in 2004 Naranjo sent cocaine to Louisiana and Mississippi on a weekly basis; he identified Torres as Naranjo's drug courier. Finally, Chris Barron testified that while he and Naranjo were in jail together, Naranjo told him about his case and asked for Barron's help in having Mora killed so that he could not testify at trial.

Naranjo called his own witnesses. Nate Nichols testified that Mora called him on January 27, 2005, to ask him to steal cocaine from the Enclave apartments. That call, which was recorded, was introduced into evidence. Robert Torres testified that Mora recruited him to drive the black truck to Houston, and that Mora helped him load the drugs into the truck. He testified that Mora was working with Losoya and Martinez, and that Naranjo was not involved in that transaction. Robert Fernandez testified that he once purchased an assault rifle from Mora, and that the assault rifle found in apartment 1601 looked like a rifle he had seen in Mora's possession.

---

more of cocaine base. 28 U.S.C. §§ 841(a)(1), 841 (b)(1)(A), & 846.

Count 3:    Conspiracy to distribute and possess with intent to distribute 5 kilograms or more of cocaine within 1,000 feet of an elementary school. 28 U.S.C. §§ 841(a)(1), 841 (b)(1)(A), 846, & 860(a).

Count 4:    Conspiracy to distribute and possess with intent to distribute 50 grams or more of cocaine base within 1,000 feet of an elementary school. 28 U.S.C. §§ 841(a)(1), 841 (b)(1)(A), 846, & 860(a).

Count 5:    Using, carrying, and possessing a semi-automatic assault weapon during, in relation to and in furtherance of a drug trafficking crime. 18 U.S.C. § 924(c)(1)(B)(I).

A jury found Naranjo guilty on all five counts. He was sentenced to 360 months of imprisonment for each of the first four counts, to run concurrently, and 120 months of imprisonment for the fifth count, to run consecutively. Naranjo now appeals his conviction, arguing that the district court erred in denying: his motion to suppress the evidence seized from his apartment; his request for debriefing notes from the Government's interviews with cooperating witnesses; his request for a jury instruction on third-party guilt; and his motion for mistrial after a witness referred to his prior incarceration. He also insists that the Government used perjured testimony against him and impermissibly commented on his failure to testify. We address each alleged error in turn.

II.

We first consider the argument that the affidavit supporting the warrant to search Naranjo's apartment was misleading because it omitted material information. Specifically, Naranjo complains that Sergeant Perez did not tell the issuing magistrate that Mora was a known con man with a criminal record who had previously acted as an informant. Naranjo argued at a suppression hearing, as he does here, that in the light of those omissions officers could not have relied on the warrant in good faith, and that any evidence seized under the warrant should have been suppressed. The district court denied his motion to suppress. For the reasons stated, we find no error in the denial.

When reviewing a district court's denial of a motion to suppress, this court reviews factual findings for clear error and legal conclusions de novo. United States v. Cherna, 184 F.3d 403, 406 (5th Cir. 1999). When reviewing factual findings based on live testimony at a suppression hearing, this court considers the evidence in the light most favorable to the prevailing party, here the Government. United States v. Garza, 118 F.3d 278, 282 (5th Cir. 1997).

"The bulwark of Fourth Amendment protection, of course, is the Warrant Clause," which requires that "police obtain a warrant from a neutral and

5

disinterested magistrate before embarking upon a search." Franks v. Delaware, 438 U.S. 154, 164 (1978). The Fourth Amendment instructs that "no warrants shall issue, but upon probable cause, supported by oath or affirmation." U.S. CONST. amend. IV.

The exclusionary rule, when properly invoked, operates to suppress evidence seized in violation of the Fourth Amendment. See, e.g., United States v. Calandra, 414 U.S. 338, 347 (1974). The exclusionary rule is "a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved." See United States v. Leon, 468 U.S. 896, 906 (1984). Accordingly, a good-faith exception has been carved into the exclusionary rule. Evidence seized in violation of the Fourth Amendment will not be suppressed "where probable cause for a search warrant is founded on incorrect information, but the officer's reliance upon the information's truth was objectively reasonable." United States v. Cavazos, 288 F.3d 706, 709 (5th Cir. 2002) (citing Leon, 468 U.S. at 919-20).

Our review of the denial of a motion to suppress evidence seized under a search warrant is a two-step process. United States v. Sibley, 448 F.3d 754, 757 (5th Cir. 2006) (citing Cherna, 184 F.3d at 407). We first ask whether a good-faith exception to the exclusionary rule applies. Id. If a good-faith exception applies, we affirm the denial of the motion to suppress. Id. If it does not, we necessarily proceed to the second step of the two-step process, which asks whether, nevertheless, there existed a substantial basis for the issuing magistrate to find probable cause. Id.

Naranjo argues a good-faith exception does not apply in his case because, according to him, Sergeant Perez intentionally omitted material information from his affidavit such that he furnished an incomplete picture of Mora's credibility. Naranjo is correct that a good-faith exception does not apply "if the

warrant affidavit contains a false statement that was made intentionally or with reckless disregard for the truth." Cavazos, 288 F.3d at 709-10 (citing Franks, 438 U.S. at 155-56); see also Sibley, 448 F.3d at 757 (listing circumstances in which good-faith exception will not apply). Naranjo bears the burden to establish that the omissions were intentional or reckless. Id. (citing United States v. Wake, 948 F.2d 1422, 1428-29 (5th Cir. 1991)).

The affidavit here omitted both that Mora was a con man with a criminal record and that he had previously acted as a government informant. Although the district court initially ruled that Sergeant Perez's omissions were made in reckless disregard for the truth, after it heard testimony from Sergeant Perez it reconsidered its ruling and decided that Sergeant Perez had prepared the affidavit in good faith. The district court found that Sergeant Perez had not omitted the information to mislead the magistrate, but rather had believed at the time that the information was not critical to a finding of probable cause. Sergeant Perez had explained in his affidavit that the informant knew that if the information he provided was incorrect it would be brought to the attention of the authorities handling the case against him. Sergeant Perez also told the district court that the detail of Mora's information led him to believe Mora was credible, notwithstanding his criminal record. Moreover, as the Government points out, the fact that Mora had previously acted as a government informant in fact would have supported probable cause; if Sergeant Perez had felt it necessary to mislead the magistrate into believing there was probable cause, he would not have omitted that fact. Given these considerations, the district court's finding was not clearly erroneous. Naranjo has not established that the omissions were intentional or reckless, such that a good-faith exception does not apply.

Nevertheless, even if Naranjo had established that the omissions were intentional or reckless, we would still ask, as did the district court, whether the omitted information would have affected probable cause. See Sibley, 448 F.3d

at 757. Probable cause is a "practical, common-sense determination as to whether, given all of the circumstances set forth in the affidavit, there is a fair probability that contraband or evidence will be found in a particular place." Cavazos, 288 F.3d at 710 (quoting United States v. Byrd, 31 F.3d 1329, 1340 (5th Cir. 1994)). The district court concluded the omitted information, had it been made known, would not have adversely affected probable cause. We agree.

We have already stated that the fact that Mora had previously acted as a government informant would have supported, not detracted from, a finding of probable cause. And the fact that Mora was a con man with a criminal record would not have been fatal to a finding of probable cause, especially in the light of other factors. It was clear from the affidavit that the informant's tip was not anonymous. Sergeant Perez represented that he had spoken with the informant and believed him to be credible. He represented that the informant was aware that if the information he provided was incorrect, the authorities handling the case against him would be notified. The informant had provided detailed information, based on his personal first-hand knowledge, and his descriptions were consistent with Sergeant Perez's own experience. Finally, the affidavit indicated that Sergeant Perez had prior knowledge of Naranjo's involvement in drug trafficking. Even had the magistrate been made aware of Mora's reputation and record, the affidavit nevertheless established a sufficient basis for probable cause to search Naranjo's apartment.

In sum, we conclude not only that Naranjo has failed to establish that the omissions were intentional or reckless, but also that the omitted information would not have adversely affected probable cause in this circumstance. The district court did not err in denying Naranjo's motion to suppress evidence seized under the warrant.

III.

Naranjo next complains that the district court erred in denying his request that the Government produce debriefing notes from its interviews with cooperating witnesses. We find no merit in this claim.

In a pretrial motion he filed with the district court, Naranjo asked that the district court either compel the Government to produce all of its debriefing notes, or review the notes in camera to determine whether they contained any material that must be disclosed under either Brady v. Maryland, 373 U.S. 83 (1963) (evidence favorable to the accused or useful to the defense for impeachment must be produced), or Giglio v. United States, 405 U.S. 150 (1972) (same). The district court did not compel the Government to produce the notes, but did review in camera the notes from interviews with each of the four cooperating witnesses who testified at trial. The district court concluded that none of the notes contained Brady-Giglio material. Later, upon Naranjo's request, the district court reviewed the same notes again for so-called Jencks statements and found none. 18 U.S.C. §§ 3500(b), (e)(1) (statements made by witnesses that relate to the subject matter on which the witness has testified must be produced).

We review Brady determinations de novo. East v. Johnson, 123 F.3d 235, 237 (5th Cir. 1997). We review a district court's rulings regarding discovery under the Jencks Act for clear error. United States v. Brown, 303 F.3d 582, 591 (5th Cir. 2002).

Naranjo complains that although the district court reviewed the notes in camera, it "refused to tender the notes to Appellant for review and use for cross examination of the witnesses." But Naranjo does not point to any portion of the notes that he alleges contained Brady-Giglio material or Jencks statements. Instead, he asserts generally that he had a right to view all of the notes. Naranjo, however, cites no authority that supports that defendants generally are entitled to the Government's notes, and the authority that he does cite does not

support his position. In United States v. Thomas, 12 F.3d 1350 (5th Cir. 1994), it was unclear whether the district court had reviewed all or only portions of the debriefing notes at issue for Brady material. We remanded so that the district court could review the notes in their entirety. Id. at 1365. In United States v. Carreon, 11 F.3d 1225, 1238 (5th Cir. 1994), we remanded so that the district court could review a presentence report for Brady material. Id. at 1238.

Here the district court has already reviewed all of the notes for each of the four cooperating witnesses who testified at trial. Naranjo does not allege that any portion of the notes contained Brady-Giglio material or Jencks statements, nor that the district court's review was incomplete such that remand is necessary for additional review. We need not dwell further on this issue. The district court properly reviewed the notes in camera, and Naranjo has shown no error.

IV.

Naranjo next contends that the district court erred in denying his proposed jury instruction on third-party guilt. The Government contends that Naranjo's instruction was an incorrect statement of the law. We agree with the Government.

Naranjo requested the following instruction:

> Evidence has been introduced tending to establish the criminal responsibility of another, Frank Mora, and that the defendant was not present at the time when, or at the place where, the defendant is alleged to have committed the offenses charged in the indictment. It is of course the Government's burden to establish beyond a reasonable doubt each of the essential elements of the offense, including the involvement of the defendant; and if after consideration of all of the evidence in the case, you have a reasonable doubt as to whether the defendant was present at the time or place alleged in the indictment, you must find the defendant not guilty.

(Emphasis added.)

Naranjo claims to have patterned the instruction after an alibi instruction approved by this court. Naranjo argues that the instruction was critical to his defense.

We review asserted error in jury instructions for abuse of discretion. See United States v. Lucas, 516 F.3d 316, 324 (5th Cir. 2008). A district court abuses its discretion by refusing a defense theory instruction only if the requested instruction: "(1) is substantively correct; (2) is not substantially covered in the charge given to the jury; and (3) concerns an important point in the trial so that the failure to give it seriously impairs the defendant's ability to present effectively a particular defense." Id. (quoting United States v. Simkanin, 420 F.3d 397, 410 (5th Cir. 2005)).

As the Government points out, Naranjo's instruction tells jurors to acquit him if they find he was not present at a specified place and time. A defendant, however, need not be present at a specified place and time to be convicted of conspiracy; presence at a specified place and time is not an element of that offense. See United States v. Thomas, 348 F.3d 78, 82 (5th Cir. 2003) (elements of conspiracy under 21 U.S.C. § 846 are "(1) an agreement between two or more persons to violate the narcotics laws; (2) the defendant's knowledge of the agreement; and (3) the defendant's voluntary participation in the conspiracy") (internal quotation marks and citations omitted). Nor is presence at a specified place and time an element of possession with intent to distribute. See United States v. Garcia, 917 F.2d 1370 (5th Cir. 1990) (elements of possession with intent to distribute are "the defendant (1) knowingly (2) possessed contraband (3) with the intent to distribute"; possession "may be either actual or constructive, and may be proven by either direct or circumstantial evidence"). Naranjo's instruction would have misled jurors to believe that if he were not

present at a specified place and time, he could not be convicted of conspiracy to distribute and possession with intent to distribute narcotics.

The instruction would have misled jurors further to conclude that they must acquit Naranjo if they found Mora criminally responsible. It should go without saying that criminal responsibility on Mora's part would not require the acquittal of Naranjo, especially where, as here, conspiracy has been charged.

Because of its misleading nature, the requested instruction was not substantively correct. Lucas, 516 F.3d at 324. The district court did not abuse its discretion in denying the instruction.

V.

Naranjo next asserts that the district court erred in denying his motion for a mistrial after witness Robert Fernandez referred to Naranjo's prior incarceration. We disagree.

Naranjo called Fernandez to testify that he had purchased an assault rifle from Mora. On cross-examination, the Government asked Fernandez how long he had known Naranjo:

> Q: So, you – And just kind of going back through to the – to the beginning, you've known the Naranjo family about sixteen years.
>
> A: Yes.
>
> Q: Used to be kind of brothers-in-law with Joe. How long have you known Rudy Naranjo?
>
> A: Through his brother.
>
> Q: Okay. That whole time pretty much?
>
> A: No. He was incarcerated for a while and then when he got out that's when I got to know him.

The district court immediately interjected, instructing the jury to ignore Fernandez's testimony and striking the testimony from the record. Later, outside the presence of the jury, Naranjo objected to the testimony and moved for a mistrial. The district court denied his motion, but offered to give an additional curative instruction:

> I've already told the jury to disregard that testimony. I don't want to talk about the testimony again, but I'm here to – I'm going to use . . . part of the charge that's normally given to them again. I will tell them they are here to decide whether the Government has proved beyond a reasonable doubt that the defendant is guilty of the crime charged. The defendant is not on trial for any act, conduct, or offense not alleged in the indictment. . . . [R]emember that Mr. Naranjo is presumed innocent and cannot be convicted unless the Government proves every element of each of those crimes beyond a reasonable doubt.

Naranjo, however, objected to further instruction, so none was given. He now complains that the district court did not declare a mistrial.

We review the district court's denial of Naranjo's motion for a mistrial for abuse of discretion. United States v. Valles, 484 F.3d 745, 756 (5th Cir. 2007). "A new trial is required only when, after a review of the entire record, it appears that there is a significant possibility that the prejudicial evidence had a substantial impact on the jury's verdict." Id. (citing United States v. Paul, 142 F.3d 836, 844 (5th Cir. 1998)). We give great weight to the district court's assessment of the subject testimony's prejudicial effect. Id. We examine the testimony in context to determine whether it was elicited by the Government, or spontaneously uttered by the witness. Id. (citing United States v. Moreno, 185 F.3d 465, 472-73 (5th Cir. 1999)). In addition, we recognize that a curative instruction from the district court can render prejudicial effect harmless. Id. (citing United States v. Nguyen, 28 F.3d 477, 483 (5th Cir. 1994)).

The district court did not abuse its discretion in denying Naranjo's motion for a mistrial. It is clear that Fernandez's testimony was inadvertent, as Fernandez was Naranjo's witness and the Government's line of questioning was not formed to elicit testimony as to Naranjo's prior incarceration. We have held under similar circumstances that such testimony does not warrant a mistrial. See United States v. Leonard, 386 F.2d 423, 425 (5th Cir. 1967) ("The volunteered words were not responsive to the question, nor could they be anticipated by the prosecuting attorney."); United States v. Perez, 223 F. App'x 336, 347 (5th Cir. 2007) (unpublished). The inadvertent and fleeting reference to Naranjo's prior incarceration could not have had a substantial impact on the jury, especially considering all of the testimony the jury heard over the course of Naranjo's trial, which lasted almost two weeks. Any prejudice was cured by the district judge's immediate interjection and curative instruction. The district court did not err in denying Naranjo's motion for a mistrial.

## VI.

Naranjo next alleges error in that the Government knowingly presented perjured testimony, thus denying his right to due process. He urges that Sergeant Perez and Agent Sanford told conflicting accounts of how Mora became a cooperating witness, and that the conflict is such that one of the officers committed perjury.

Naranjo points first to testimony Sergeant Perez gave at a suppression hearing in which he stated that it "was just a coincidence" that he encountered Mora on January 28, 2005. Naranjo asserts that there was no coincidence, as evidenced by the fact that Agent Sanford testified that she called Detective Lopez and advised him to talk to Mora, and Sergeant Perez contacted Detective Lopez thereafter.

Naranjo also points to testimony in which Sergeant Perez stated that he did not speak with Agent Sanford until after he had interviewed Mora. Naranjo

points to Agent Sanford's phone records that show Sergeant Perez spoke with Agent Sanford immediately after Mora's arrest, earlier than he testified.

To prove his right to due process has been violated by the use of perjured testimony, Naranjo must show "(1) the actual falsity of a witness's testimony, (2) that the testimony was material, and (3) that the prosecution knew the witness's testimony was false." Kutzner v. Johnson, 242 F.3d 605, 609 (5th Cir. 2001) (citations omitted).

Naranjo does not meet his burden because at best he shows only minor inconsistencies that were not material to his guilt. "Perjury is material, and a new trial is required 'if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury.'" Creel v. Johnson, 162 F.3d 385, 391 (5th Cir. 1998) (quoting Kirkpatrick v. Whitley, 992 F.2d 491, 497 (5th Cir. 1993)). We cannot see how the very minor inconsistencies to which Naranjo points affected the judgment of the jury. Accordingly, this issue is without merit.

VII.

Finally, Naranjo says that the Government impermissibly commented on on Naranjo's failure to testify, in violation of Naranjo's Fifth Amendment right to silence.

In closing argument, the prosecutor for the Government told the jury:

> But there's one person in this room who has told you more clearly than anyone else that Mora was telling the truth about those drugs and that person, ladies and gentlemen, is Rudy Naranjo.

Naranjo objected, and the prosecutor explained that she intended only to draw an inference from other evidence. The district court then instructed the jury:

> Just remember, ladies and gentlemen, Mr. Naranjo is presumed innocent. Mr. Naranjo does not have to testify or give evidence of any kind. I will allow an inference – inferential argument, but you know of course, Ms.

15

> Carlisle, there can be no statement or inference that Mr. Naranjo needs to testify or has to give evidence or anything like that.

The prosecutor went on to state:

> [H]ere's my point on this, ladies and gentlemen: Based on Chris Barron's testimony, it was Rudy Naranjo who said Frank Mora can't testify. Frank Mora can't be allowed to testify. Because Rudy knew that Frank Mora was an eyewitness to that big load of drugs at the – that Rudy got at the apartment on January 27th. So these actions, ladies and gentlemen, tell you that the defendant believed that Frank Mora's testimony was indeed very, very important. Critical. The eyewitness.

Of course, it is well-established that the Government may not comment on a defendant's decision not to testify. See Doyle v. Ohio, 426 U.S. 610, 617-18 (1976). Not every comment, however, violates the Fifth Amendment. A comment violates the Fifth Amendment only where the language used was (1) "manifestly intended" or (2) "of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." United States v. Wharton, 320 F.3d 526, 538 (5th Cir. 2003) (quoting United States v. Rocha, 916 F.2d 219, 232 (5th Cir. 1990)). We review such comments in context, and they "must have a clear effect on the jury before reversal is warranted." Rocha, 916 F.2d at 232. We apply the doctrine of harmless error: a comment will not warrant reversal if, beyond a reasonable doubt, it did not contribute to the jury's verdict. United States v. Moreno, 185 F.3d 465, 475 (5th Cir. 1999). Finally, we have recognized that a curative instruction can "militate against finding a constitutional violation, or become central to the harmless error analysis." Id. at 477 (citing Greer v. Miller, 483 U.S. 756, 764 (1987); United States v. Carter, 953 F.2d 1449, 1466 (5th Cir. 1999)).

Our review of the prosecutor's comment in context leads us to the conclusion that she did not manifestly intend it to be an indirect comment on Naranjo's decision not to testify. We have held that "[t]he prosecutor's intent is not manifest if there is some other, equally plausible explanation for the remark." United States v. Grosz, 76 F.3d 1318, 1326 (5th Cir. 1996). Here, the plausible explanation for the prosecutor's comment is that it sought to draw attention to evidence that indicated Naranjo did not want Mora to testify. The prosecutor was commenting on Chris Barron's testimony as to statements Naranjo made to him, not on Naranjo's decision not to testify.

Nor was the comment such that the jury would naturally and necessarily interpret it to be a comment on Naranjo's decision not to testify at trial. The district court instructed the jury that Naranjo had no burden to testify or put on evidence. Error, if any, was rendered harmless by the district court's instruction.

## VIII.

For the reasons we have stated, we find no error in the prosecution and trial of this case. Accordingly, Naranjo's convictions are, in all respects,

AFFIRMED.