# United States Court of Appeals for the Fifth Circuit

No. 23-10480

United States Court of Appeals
Fifth Circuit

**FILED**

July 22, 2024

Lyle W. Cayce
Clerk

United States of America,

*Plaintiff—Appellee*,

*versus*

David Devaney, Jr.,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:22-CR-213-2

Before Smith, Engelhardt, and Ramirez, *Circuit Judges*.

Jerry E. Smith, *Circuit Judge*:

David Devaney, Jr., was convicted of participating in a drug trafficking conspiracy. On appeal, he challenges the denial of his motions to suppress evidence obtained from his car and his two cell phones and incriminating statements he made during a post-arrest interrogation. Additionally, he contests the court's calculation of his Guidelines offense level. We affirm.

I.

David was charged with, *inter alia*, conspiracy to possess fifty grams or more of methamphetamine ("meth") with intent to distribute (count

one), arising from his providing security for a drug trafficking scheme executed by his father, David Devaney, Sr., ("Senior"). The drug deal went awry when Hernandez and Mejia—the parties on the opposite side of the transaction (collectively, "buyers")—declined Senior's request for them to travel to a nearby hotel room. The buyers then left—which prompted David, Senior, and a third co-conspirator to give chase in three vehicles.

David eventually caught up to the buyers' vehicle, forcing it to stop. He and his co-conspirators began shooting at the buyers, injuring Mejia and killing an innocent bystander. Later that day, officers apprehended and arrested Mejia and Hernandez. Sometime afterward, Mejia positively identified David from a photo array as one of the shooters.

The next day, officers spotted David driving a Chevrolet Corvette and attempted to initiate a traffic stop. David led the officers on a high-speed chase covering approximately two miles. He then parked the Corvette, fled on foot, and was ultimately arrested. In his post-arrest interview, David admitted that he had provided security for the drug transaction and chased the buyers' car. But he claimed that he did not fire a gun.

Officers obtained warrants to search the Corvette and the two cell phones. A search of the Corvette revealed various drugs and drug paraphernalia, including roughly 108 grams of meth. The phones contained text messages with Senior discussing distribution of meth and marihuana.

## II.

David filed motions to suppress (1) the evidence discovered in the Corvette, (2) the evidence in his two cell phones, and (3) the incriminating statements he made in his post-arrest interview. The district court heard oral argument on the motions and denied all three.

The parties then entered a joint stipulation of facts that established

David's guilt as to his conspiring to possess fifty grams or more of meth with intent to distribute (count one). The joint stipulation, however, expressly reserved David's right to appeal the suppression rulings.

In a bench trial, the district court found David guilty of violating 21 U.S.C. § 841(a)(1) and (b)(1)(A). The presentence report assigned him a final offense level of 43. Based on David's criminal history category, the presentence report recommended life imprisonment, which was reduced to the statutory maximum of 40 years. The district court sentenced David to 480 months of imprisonment and four years of supervised release.

## III.

David contends that the district court erred in denying David's motions to suppress the evidence located in (A) the Corvette and the two cell phones, as well as (B) the incriminating statements he made in his post-arrest interview.

For denials of motions to suppress, we review "factual findings for clear error and the ultimate constitutionality of law enforcement action *de novo*." *United States v. Scroggins*, 599 F.3d 433, 440 (5th Cir. 2010). Evidence is viewed in the light most favorable to the prevailing party (here, the government). *Id.* A ruling on a motion to suppress "should be upheld if there is any reasonable view of the evidence to support it." *Id.* (internal quotation marks and citation omitted).

### A.     *The Corvette and the Cell Phones*

Warrants are reviewed under a two-part test. In the first step, we determine whether the good-faith exception to the exclusionary rule applies. Under that exception, "evidence obtained from [a] search will not be excluded" even if "probable cause for a search warrant is founded on incorrect information," so long as "the officer's reliance upon the information's truth

was objectively reasonable." *United States v. Cavazos*, 288 F.3d 706, 709 (5th Cir. 2024) (citations omitted).

We move to the second step only if the good-faith exception is inapplicable. There, we address "whether the magistrate had a substantial basis for finding probable cause." *Id.* "Probable cause does not require proof beyond a reasonable doubt, but only a showing of the probability of criminal activity." *United States v. Froman*, 355 F.3d 882, 889 (5th Cir. 2004) (quotation omitted).

David complains that "Detective Martin's warrant affidavit was 'bare bones' as it pertains to [his] blue Corvette." Same too with the warrant affidavit for his two cell phones.

Specifically, he observes that the former (1) did not describe a Corvette as one of the vehicles involved in the shooting incident and (2) lacked the requisite nexus to drug-related crimes. As to the latter affidavit, he avers (1) that it lacked detail on the manner of his communications and (2) that the affiant did not expressly invoke his "training and experience" with the behavior of drug dealers.

In response, the government (a) emphasizes the affidavits' length, (b) highlights their extensive detailing of the crimes committed, the participants, and the location and timing of the events, and (c) observes that both were evaluated by a neutral magistrate who independently determined that the probable cause standard had been satisfied.

The government has the better position with regard to both motions to suppress. As a general matter, David's averments are more germane to attacking "the probable-cause determination itself" than to showing the applicability of the bare-bones cutout. *United States v. Morton*, 46 F.4th 331, 338 (5th Cir. 2022) (en banc). In other words, his contentions—even if taken at face value—would not show that the affidavits were "bare bones."

No. 23-10480

That's because an affidavit *is not* bare bones merely because it fails to establish probable cause.[1]  Rather, the term describes only those affidavits that "contain *wholly conclusory* statements"—*i.e.*, those that are completely devoid of "the facts and circumstances from which a magistrate can independently determine probable cause." *Id.* at 336 (quotation omitted) (emphasis added).

"Bare bones" does not describe the affidavits at issue.  Unlike true bare-bones affidavits, which "do not detail any facts" and "allege only conclusions," *id.* at 337, those used to search David's Corvette and cell phones detailed the "crimes committed, the participants, as well as the location and time of the events."  Thus, both affidavits "put all the relevant 'facts and circumstances' before the state judge, allowing him to 'independently determine' if the . . . probable-cause standard had been met."[2]

Furthermore, both affidavits include sufficient detail regarding (1) the Corvette and (2) the cell phones, thereby making it reasonable for the officers to rely on the warrants.

(1) David was "positively identified . . . as a subject who discharged a firearm" in the aftermath of an illegal narcotics transaction.[3]  The day before, he shot at a moving vehicle while driving.  Moreover, he "attempted to evade officers with the [Corvette]."  Given his involvement in the shooting, his use

_____

[1] Indeed, an affidavit—though presenting an impartial magistrate with a "close call" on probable cause—may nonetheless be "far from bare bones."  *Morton*, 46 F.4th at 338.

[2] *Morton*, 46 F.4th at 337–38; *see also United States v. Huerra*, 884 F.3d 511, 515–16 (5th Cir. 2018).

[3] *United States v. Tovar*, 719 F.3d 376, 385–86 (5th Cir.2013) (concluding affidavit was "not bare bones" where it included, *inter alia*, a "positive identification of [the suspect] in a photo lineup").

of a firearm while driving, and his evading arrest, a magistrate could reasonably infer that the guns used in the shooting were inside the vehicle.

(2)  David had two phones when he was arrested.  Per *Morton*, the presence of "multiple phones . . . can indicate that [they] are being used for criminal activity."  46 F.4th at 338.[4]  Further, he admitted that he was involved in a scheme to sell illegal narcotics.  A magistrate could thus infer that the phones were used in furtherance of that scheme.  *See id.* at 338 & n.3.

Additionally, the affiant stated that, "based on [his] training and experience," "illegal narcotic transactions involving fraudulent, counterfeit[,] or prop money . . . may escalate to shootings or homicides."  Given that the magistrate could infer that the phones were used in the drug scheme, he could also reasonably infer that they would contain evidence of the shootings and homicides that followed immediately afterwards.

The affidavits were not "bare bones," so the good-faith exception applies.  *See Cavazos*, 288 F.3d at 709.  The district court correctly denied David's motions to suppress evidence seized from the Corvette and the two cell phones.

## B.    *Incriminating Statements*

*Miranda* created a prophylactic right, based on the Fifth and Fourteenth Amendments, for an accused "to have counsel present during custodial interrogation."  *Edwards v. Arizona*, 451 U.S. 477, 482 (1981).  Upon invoking his right to counsel, an accused "is not subject to further interrogation by the authorities until counsel has been made available to him, unless the

---

[4] *Accord United States v. Campos-Ayala*, 105 F.4th 235, 245 (5th Cir. 2024) (en banc) (stating that for sufficiency of the evidence in a drug-possession case, "the jury was entitled to give any amount of weight or credence" to the fact that a defendant possessed two phones).

accused himself initiates further communication, exchanges, or conversations with the police." *Id.* at 484–85.

But an accused's invocation of his right to counsel must be unequivocal and unambiguous. *See Berghuis v. Thompkins*, 560 U.S. 370, 380–82 (2010). Further communication is "initiated" if the accused "evince[s] a willingness and a desire for a generalized discussion about the investigation." *Oregon v. Bradshaw*, 462 U.S. 1039, 1045–46 (1983).

David contends that officers continued interrogating him despite his four requests for counsel:

(1) David mentioned an attorney when officers began asking about the drug deal. But, when officers then asked whether he was invoking his right to counsel, he answered "[n]ot yet . . . I'm not asking for an attorney yet."

(2) David asked whether the officers would call Brian Poe, stating that he wanted Poe's advice. David then clarified that he wanted merely to call Poe "as a friend"—without hiring him as his attorney—and without ending the interview.

(3) David asked again whether there was "a way to talk to my attorney without ending the interview." The officers answered in the negative.

(4) David asked a third time whether he could call Poe as a friend. The officer responded that he would not allow David to make phone calls at that time. David then indicated that he wanted to continue providing information and consented to searches and forensic testing.

The government responds that none of those requests was sufficiently unequivocal and unambiguous. We agree. David did not invoke his right to

counsel.

In (1) and (2), David affirmatively disclaimed his intent to invoke counsel and his intent to retain Poe as counsel, respectively. Thus, neither statement articulated a desire to have counsel present. *Edwards*, 451 U.S. at 484–85.

Same with (3). Though David mentioned his "attorney," he did so only in the context of asking *whether* there was any way he could invoke his right to counsel without terminating the interview. Such a procedural inquiry is "too equivocal to constitute a clear invocation of the right to counsel." *Soffar v. Cockrell*, 300 F.3d 588, 595 (5th Cir. 2002).

Furthermore, immediately after his query, David explicitly stated that he did not want to end the interview. That countervailing desire to continue speaking with the officers renders ambiguous any invocation of his right to counsel. *United States v. Carrillo*, 660 F.3d 914, 922–24 (5th Cir. 2011).

Lastly, in (4), David zeroes in on the officer's stating "I'm not letting you make no phone calls right now"—characterizing it as "[t]he most blatant violation of [his] right to counsel." Per the transcript, however, the officer's statement was made immediately after David asked whether he could call "his attorney" "as a friend." Context from (2) therefore indicates that David wanted to make a personal phone call to Poe.[5] So David did not express a desire to have counsel present. *See Edwards*, 451 U.S. at 484–85.

Consequently, David failed properly to invoke his right to counsel. The district court did not err in denying his motion to suppress the statements he made during his post-arrest interrogation.

––––––––––––––––––––––––

[5] In determining whether the right to counsel was invoked, we consider statements in the context in which they were made. *See Carrillo*, 660 F.3d at 921–22.

IV.

We review *de novo* the district court's interpretation and application of the Guidelines; factual findings are reviewed for clear error. *See United States v. Juarez-Duarte*, 513 F.3d 204, 208 (5th Cir. 2008).

Under U.S. Sent'g Guidelines Manual ("U.S.S.G.") § 2D1.1, David's base offense level was set at 36. Various enhancements raised his offense level to 47, which was then reduced to 43. *See* U.S. Sent'g Guidelines Manual ch. 5, pt. A, cmt. n.2. The district court therefore imposed the statutory maximum of 40 years. Additionally, it found that § 2D1.1's cross-reference to U.S.S.G. § 2A1.1 applied.

David contests (a) the quantity of drugs used in calculating his base offense level under § 2D1.1 and (b) the three-level "aggravating role" adjustment. He additionally contends that (c) the district court erred in failing to apply a two-level reduction for acceptance of responsibility.

But none of his challenges matters if § 2D1.1's cross-reference to § 2A1.1 applies. That's because the cross-reference sets the offense level to 43 whenever it is greater than the offense level calculated under § 2D1.1.[6] Any error external to the cross-reference would thus be harmless, as the district court would have "(1) imposed the same sentence had it not made the error, and (2) done so for the same reasons it gave at the prior sentencing." *United States v. Stanford*, 823 F.3d 814, 845 (5th Cir. 2016) (cleaned up).

Section 2D1.1(d)(1) cross-references § 2A1.1. As relevant here, courts are instructed to apply § 2A1.1 if "a victim was killed under circumstances that would constitute murder under 18 U.S.C. § 1111." Thus, the

_____

[6] *See* § 2D1.1(d)(1) ("the resulting offense level [would be] greater than that determined under [§ 2D1.1 itself]").

cross-reference's applicability turns on whether the conduct is "relevant conduct" under U.S.S.G. § 1B1.3. *See Appellant 1*, 56 F.4th at 392–94.[7]

For David's crime of conviction, § 1B1.3 defines relevant conduct as "all acts and omissions described in subdivisions (1)(A) and (1)(B) above that were part of the same course of conduct or common scheme or plan as the offense of conviction." "Conduct is part of a common scheme or plan if it is substantially connected to the offense of conviction by at least one common factor, such as common victims, common accomplices, common purpose, or similar modus operandi." *Appellant 1*, 56 F.4th at 394 (quotation omitted). All those commonalities describe co-conspirators' chasing after and shooting at the buyers. So, plainly, those acts are part of the same drug scheme.

Section 1B1.3(a)(1)(B) covers "the conduct . . . of others that was: (i) within the scope of the jointly undertaken criminal activity; (ii) in furtherance of that criminal activity; and (iii) reasonably foreseeable in connection with that criminal activity." All three prongs are met here.

(i)–(ii) During his post-arrest interrogation, David admitted that he participated in the drug scheme by providing armed security. He further admitted that he chased after the buyers' car after the drug deal fell apart.

Though the identity of the shooter who fired the shot that killed the innocent bystander is unknown, ample evidence shows that it was David or his co-conspirators, as all shot at the buyers' vehicle. Indeed, gunshot residue was found in each of the vehicles driven by David and his co-conspirators. And both his co-conspirators and Mejia advised that David discharged his firearm at the buyers' vehicle.

---

[7] Since "acts outside those underlying the offense of conviction" can be considered "only when those acts constitute 'relevant conduct.'" *Appellant 1*, 56 F.4th at 392.

Moreover, the pursuit and shooting are consistent with the purposes of the drug transaction. Senior stated that they gave chase "to talk to [the buyers]"—*i.e.*, allegedly salvage the transaction. The motive for the shooting also comports with that underlying the transaction—to get payback from the buyers for paying with "counterfeit currency" in a prior drug transaction.[8]

(iii) Our circuit has "repeatedly observed" that "firearms are tools of the trade of those engaged in illegal drug activities." *United States v. Aguilera-Zapata*, 901 F.2d 1209, 1215 (5th Cir. 1990) (cleaned up). Given the nature of drug trafficking, it would have been reasonably foreseeable that a weapon would be used.

Thus, the district court could permissibly find, by a preponderance of the evidence,[9] that the "murder . . . was reasonably foreseeable" and that David "aided and abetted in that murder." So it did not err in finding that the § 2A1.1 cross-reference applied.

David responds with two objections in his opening brief.[10] (1) He asserts that "the facts do not suggest [that the death of the innocent bystander] was an unlawful killing with malice aforethought." (2) He also asseverates that "there is no evidence to suggest that [he] planned or committed a robbery." Neither objection has merit.

(1) First-degree murder, as defined in 18 U.S.C. § 1111(a), includes "murder . . . perpetrated from a premeditated design unlawfully and maliciously to effect the death of any human being other than him who is killed."

---

[8] *See* ROA.912 ("'get [the buyers] back' and make sure they never did it again").

[9] "The burden of proof in this respect is on the government under a preponderance of the evidence standard." *Aguilera-Zapata*, 901 F.2d at 1215.

[10] Neither objection is mentioned in his reply brief.

David does not raise any points of error regarding the government's theory that he and his co-conspirators "intended to effect the murder or the death of another human being"—*i.e.*, the buyers—when they blocked off and shot up their vehicle.

(2) The cross-reference applies to any "relevant conduct"—not just "robberies." *See* § 1B1.3(a)(2). Consequently, § 2D1.1's cross-reference to § 2A1.1 applies.[11]

That cross-reference fixes David's offense level at 43. Any higher offense level would be reduced automatically to 43, *see* U.S. SENT'G GUIDELINES MANUAL ch. 5, pt. A, cmt. n.2, and any lower offense level would rise back to 43, *see* § 2D1.1(d)(1). Any other sentencing error would have *no* effect on David's offense level and is thus, definitionally, harmless error. *See Stanford*, 823 F.3d at 845.

AFFIRMED.

---

[11] Moreover, David's reply brief never responds to the government's contentions on this issue. Accordingly, he has waived any issue on appeal with respect to the cross-reference's applicability. *See Duncan v. Wal-Mart La., L.L.C.*, 863 F.3d 406, 408 n.2 (5th Cir. 2017) (stating that failing to address appellees' responsive contentions in reply briefing is tantamount to abandonment).