# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 11, 2013

No. 11-30877

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

MATTHEW DEAN MOORE; MELVIN WILLIAMS

Defendants-Appellants

Appeals from the United States District Court
for the Eastern District of Louisiana

Before DAVIS, JONES, and SMITH, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Defendants Matthew Dean Moore and Melvin Williams are former New Orleans Police Officers appealing their convictions and sentences arising from an incident that resulted in the death of Raymond Robair. Following a jury trial, Williams was convicted of causing the death of Robair while depriving him of his civil rights, in violation of 18 U.S.C. § 242 (Count 1). Williams and Moore were convicted of aiding and abetting obstruction of justice by filing a false police report, in violation of 18 U.S.C. § 1519 (Count 2). Moore was convicted of making a false statement to the FBI, in violation of 18 U.S.C. § 1001 (Count 3). Both defendants argue that the evidence was insufficient to sustain their convictions and challenge their respective sentences. We affirm.

No. 11-30877

## I.

The following factual summary is presented in the light most favorable to the jury's verdict convicting the defendants on all counts.

On July 30, 2005, at approximately 9:00 a.m., Raymond Robair was on Dumaine Street in New Orleans. A patrol car driven by New Orleans Police Department (NOPD) officer Williams pulled over to the curb near Robair. Williams had been employed by the NOPD since 1994. Officer Moore, who was in the passenger seat, was a recruit who had graduated from the police academy several months earlier and was under the supervision of Williams, his field training officer.

When the patrol car stopped, Robair turned to go the opposite way. Moore got out of the patrol car, grabbed Robair, threw him to the ground, got on top of him and tried to handcuff him. Williams also got out of the car, and helped Moore handcuff Robair.

Although the testimony was not entirely consistent, four neighborhood witnesses testified that while Robair was on the ground with Moore on top of him, Williams kicked Robair in the torso. Robair screamed. Williams then struck Robair across the legs and torso with his metal police baton while Moore held Robair. Robair did not resist and Moore did nothing to stop Williams. Williams and Moore then put Robair into the back of the patrol car and drove away.

The officers drove Robair to the emergency room at Charity Hospital, arriving at around 9:20 a.m. They brought Robair, who was unresponsive, in by wheelchair. Williams told the charge nurse that Robair had been found lying on the ground under a bridge and had a history of drug use. Williams and Moore did not identify themselves or provide their badge numbers, which was unusual, and left after about ten minutes. They returned about 15 minutes later. Williams told the nurse that they had found some crack cocaine in the back of

the police car. Neither officer mentioned that Robair's condition was a result of a trauma.

Based on this information, the medical staff at the hospital treated Robair for drug overdose. There was no visible outward sign of trauma and no evidence of blood. Tests revealed that Robair did have cocaine in this system, track marks on his arm and a high heart rate – all of which are consistent with a response to cocaine. X-rays showed that Robair had one broken rib. While in the emergency room, Robair also suffered a heart attack requiring chest compressions and other means to resuscitate him.

Around 10:55 a.m., doctors drew fluid from Robair's abdomen and determined that he had internal bleeding, leading doctors to suspect trauma. He was immediately taken to the operating room, but it was too late to save him. Robair's spleen had ruptured, causing massive internal bleeding. Experts testified that if the staff had known that Robair was a victim of blunt force trauma, he would have been treated differently and would likely have survived.

Two autopsies were performed on Robair, one by Dr. McGarry of the Orleans Parish Coroner's Office and one by plaintiff's expert Dr. Sperry, chief medical examiner for the State of Georgia, which was conducted post-embalming.[1] Both identified the cause of death as internal bleeding due to a ruptured spleen. Dr. Sperry further concluded that Robair sustained massive force on the left side of the chest that broke four ribs and crushed his spleen. Dr. Sperry also found other evidence to indicate that Robair was the victim of a beating and that the injuries to his ribs and spleen were consistent with a kick. Dr. Sperry concluded that the death was a homicide.

On the day of Robair's death, Officers Williams and Moore filled out an incident report regarding their encounter with Robair. The report does not

---

[1] Dr. Sperry was also the expert hired by Robair's family to give testimony in the civil suit arising from Robair's death.

No. 11-30877

mention any use of force, rather describing the encounter as a medical incident. The officer's respective roles in preparing the report were disputed.

When interviewed by an FBI investigator, Moore stated that Robair was running toward their patrol car as they drove down Dumaine Street. He also stated that when they stopped the car, Robair ran into the street, made some evasive moves and then fell to the ground when his shoe fell off. Moore stated that he jumped onto Robair to attempt to handcuff him. Williams assisted getting Robair handcuffed. They then placed him in the car and transported him to the hospital. Moore denied that he or Williams ever kicked or struck Robair. Moore and Williams testified similarly at trial.

After a jury trial, Moore and Williams were convicted on all counts. The jury also found that Williams' violation of Section 242 (the civil rights charge) "resulted in the death of Raymond Robair."[2] The defendants filed motions for judgment of acquittal at the close of the government's evidence and at the close of all of the evidence, which were denied. Moore filed a motion for judgment of acquittal on Count 2 after the jury's verdict, which the court also denied.

The district court sentenced Williams to 262 months' imprisonment on Count 1 and 240 months' imprisonment on Count 2, to be served concurrently. The court sentenced Moore to 70 months' imprisonment on Count 2 and 60 months' imprisonment on Count 3, to be served concurrently. Both defendants timely appealed.

## II.

Questions concerning sufficiency of the evidence are reviewed to determine if "a rational trier of fact could have found that the evidence established the essential elements of the offense beyond a reasonable doubt." *United States v.*

---

[2] In addition to asking the jury to indicate whether they found each of the defendants guilty or not guilty, the Verdict Form asked under Count 1 "Do you find that the offense resulted in the death of Raymond Robair?"

No. 11-30877

*Ned*, 637 F.3d 562, 568 (5th Cir.), *cert. denied*, 132 S.Ct. 276 (2011). The evidence is viewed in the light most favorable to the verdict and this court draws all inferences and credibility choices made in support of the verdict. *Id*.

Questions of law are reviewed *de novo*. Sentencing Guidelines calculations are reviewed for clear error, but the legal interpretation and application of the Guidelines are reviewed *de novo*. *United States v. Smith*, 440 F.3d 704, 706 (5th Cir. 2006).

### III.

Williams argues that the evidence was legally insufficient to support his conviction for causing Robair's death on Count 1. To prove a violation of Section 242, the government must prove beyond a reasonable doubt that the defendant: (1) willfully; (2) deprived another of a federal right; (3) under color of law. *United States v. Brugman*, 364 F.3d 613, 616 (5th Cir. 2004). If the violation results in bodily injury, or involves the use of a deadly weapon, it is punishable by up to ten years of imprisonment. If the violation results in death, it is punishable by imprisonment "for any term of years or for life." 18 U.S.C. § 242. For Williams to be subject to the longer sentence, the government was required to prove as an element of the offense that Williams' violation of Robair's civil rights resulted in Robair's death. The jury so found.

Williams states that it is undisputed in the record that the baton strikes, which caused only extensive bruising to Robair's lower extremities, did not cause Robair's death. Thus he narrows the question to whether the evidence is sufficient to conclude that Williams caused Robair's death by kicking him, particularly whether death was a foreseeable result of his conduct.[3] Williams

---

[3] On this issue the jury charge stated that if the government proved the elements above, "you must return a verdict of "Guilty" as to Count 1." The charge continued –

In addition, you must determine whether the Government has proved beyond a reasonable doubt that Raymond Robair died as a result of the defendant's conduct.

highlights the alternative theories that were presented as to the cause of the injury to Robair's spleen – that he was injured when Moore fell on top of Robair and Robair's body hit the curb in the process of trying to get him handcuffed in contrast with the government's theory that he was injured when Williams kicked him in the chest. He also points to testimony that doctors found only one rib fracture in the first x-ray taken at Charity Hospital, while the autopsy revealed that he suffered from four rib fractures. From this he argues that Robair's injury must have occurred during medical treatment for drug overdose and heart attack, based on expert testimony that a ruptured spleen would cause death within fifteen minutes to an hour. Robair survived several hours after the time of the alleged kick. Finally Williams argues that because Robair had a cirrhotic liver and his spleen was enlarged, there was no basis for the jury to conclude that Robair's death resulted from a kick by Williams.

While the jury certainly could have reached a different conclusion, these arguments ignore the evidence in the record that supports the jury's verdict. Four witnesses testified that they saw Williams kick Robair while Robair was on the ground, causing Robair to let out a scream. Robair was then placed in the police car and was unresponsive upon arrival at the hospital. Dr. Sperry testified that the crushing injury to Robair's spleen was caused by massive force, force greater than what occurred from a fall or punch, negating the defendants' theory that the injury occurred when Moore fell on top of Robair causing Robair's torso to strike the curb. He also testified that Robair's condition on arrival at the

---

The Government need not prove that the defendant intended for the victim to die. The Government must prove only that the victim's death was a foreseeable result of the defendant's willful deprivation of the victim's constitutional right. Should you find that some other factor or some other intervening circumstance caused or contributed to the victim's death, you may still find that the death resulted from the defendant's conduct if you find beyond a reasonable doubt that such other factor was a foreseeable result of the defendant's actions.

No. 11-30877

emergency room was consistent with that of a person with a severe splenic laceration.    Even the defendant's expert testified that the spleen injury could have been caused by a hard kick.    There is no dispute that Robair died of internal bleeding due to a ruptured spleen.

Evidence also explains the fact that initial x-rays only showed one rib fracture, whereas four were discovered during the autopsy.  Dr. Sperry testified that it was not unusual for an x-ray and autopsy to be inconsistent in this context, that Robair's rib injury and spleen injury occurred at the same time, and that the fractured ribs and crushed spleen could not have resulted from medical treatment. Dr. Sigillito, who treated Robair in the emergency room, also testified that he knew of nothing that could have happened at the hospital to cause the injuries to Robair.

The jury was free to choose among reasonable constructions of the evidence.  *United States v. Holmes*, 406 F.3d 337, 351 (5th Cir. 2005).  The fact that both medical evidence and eyewitness testimony are conflicting does not preclude a finding of guilt by a jury who has the task of deciding which evidence to credit.  *United States v. Melgoza*, 469 F. App'x. 357, 358-59 (5th Cir. 2012) (unpublished).

As to the argument about the foreseeability of death as a result of the kick given Robair's cirrhotic liver, this circuit has established that the government must prove that "death ensued as a proximate result of the accused['s] willful violation of a victim's defined rights." *United States v. Hayes*, 589 F.2d 811, 820 (5th Cir. 1979).  Under that test, "a person is responsible for all consequences proximately caused by his criminal conduct." *Id.* at 821.  Based on the testimony outlined above, a jury could reasonably conclude beyond a reasonable doubt that Robair's death was proximately caused by and the foreseeable result of being kicked in the chest.

No. 11-30877

Because Moore's sentence was based in part on Williams' conviction of voluntary manslaughter, Moore also argues that the evidence was insufficient to sustain Williams' conviction on this count.  In addition to the arguments raised above, Moore argues that the government wrongfully swayed the jury by presenting derogatory evidence about conduct of other NOPD officers.  Based on our review of the trial transcript, the cited testimony was elicited on cross-examination in response to the testimony of a NOPD Internal Affairs officer called by the defense, who found no police wrongdoing in connection with Robair's death.  The testimony was brief and any error was harmless.

Moore also argues that the jury was inadequately instructed on the term "foreseeable" causing it to err in finding that Williams' conduct caused Robair's death.  The jury sent several questions to the district court regarding the meaning of the term foreseeable.  The district court declined to give further instructions on the meaning of the word. We agree that the term foreseeable is not unduly technical or outside the common understanding of a jury and thus required no definition. *United States v. Chenault*, 844 F.2d 1124, 1131 (5th Cir. 1988).  In addition, neither defendant objected to the jury charge as given. Again, we conclude that a jury could reasonably conclude from the evidence that Robair's death was proximately caused by and the foreseeable result of being kicked in the chest by Williams.

## IV.

Williams also argues that the district court erred in calculating his sentence by basing his offense level under the Sentencing Guidelines on the underlying offense of voluntary manslaughter rather than involuntary manslaughter.  The base offense level for voluntary manslaughter is 29.  The base offense level for involuntary manslaughter is 18.

The district court, after a lengthy discussion of applicable law, overruled Williams' objection to the use of voluntary manslaughter to compute the base

offense level.  Voluntary manslaughter is the unlawful killing of a human being, upon sudden quarrel or heat of passion, either intentionally or with one of the mental states constituting common law malice.  *United States v. Browner*, 889 F.2d 549, 553-54 (5th Cir. 1989).  An intent to do bodily harm is a qualifying mental state.  *Id.* at 552.[4]  The district court found that Williams had the intent to cause bodily harm, satisfying this element.

The district court carefully considered the evidence and based this finding on both the facts that occurred during the initial encounter with Robair on Dumaine Street as well as those that occurred when the officers delivered Robair to Charity Hospital.

> In this particular case, the defendant took the victim to the hospital after kicking and striking him. Rather than telling the doctors about the violent arrest, the officer lied and covered up any evidence of the beating. The defendant chose to mislead the doctors about why Mr. Robair needed their immediate care. As a direct result of the beating and  cover-up, Robair died. He bled to death internally.
>
> The Court must hold that the defendant's conduct so grossly deviated from the reasonable care standard that he must have been aware that a serious risk of bodily injury occurred. He brought him to the hospital, Charity Hospital.  If he didn't feel he was seriously injured, the likelihood is that he would have brought him to the station, booked him, given him a bandaid if he was cut on the lip or the eye. He was so seriously injured he felt, obviously, that he had to bring him to the hospital.

---

[4] "Voluntary manslaughter" is defined to be the "unlawful killing of a human being without malice . . . [u]pon a sudden quarrel or heat of passion."  18 U.S.C. §1112(a). "Involuntary manslaughter" is defined as the "unlawful killing of a human being without malice . . . [i]n the commission of an unlawful act not amounting to a felony, or in the commission in an unlawful manner, or without due caution and circumspection, of a lawful act which might produce death." *Id.* Although voluntary manslaughter is defined as a killing without malice, it nevertheless includes the element of malice negated by the existence of a "sudden quarrel or heat of passion." *Browner*, 889 F.3d at 553.  Mental states constituting malice in this context include: "(1) intent to kill; (2) intent to do serious bodily injury; and (3) the existence of a 'depraved heart,' another term of art that refers to a level of extreme recklessness and wanton disregard for human life." *Id.* at 552.

No. 11-30877

He brought him to the hospital and then he told the doctors that, "We found him under a bridge and we think he swallowed some cocaine." That's, I think, beyond the pale. Therefore, the Court concludes that it is appropriate to utilize the voluntary manslaughter guidelines.

Considering Williams' entire involvement in the events leading up to Robair's death – the kick, beating and misleading the hospital staff as to the source of his condition – to determine whether Williams should have been aware of a serious risk of death or serious bodily injury is appropriate. In *United States v. Conaster*, 514 F.3d 508, 523-34 (6th Cir. 2008), the Sixth Circuit considered not only the correctional officer's awareness that another officer had beaten the victim, but also his delay in seeking medical treatment for the victim, and his failure to inform emergency medical personnel, after the prisoner was found unconscious, that he might have struck his head. Clearly the facts in *Conaster* were much more egregious than the isolated assault that occurred in this case. However, we find closely analogous and appropriate the district court's consideration of the totality of the officer's involvement in the circumstances leading up to the death of the victim to determine which underlying offense should be referenced for purposes of sentencing. See also *United States v. McDougle*, 82 F. App'x 153 (6th Cir. 2003) (Upholding sentence based on second degree murder where employees of state home for mentally retarded and physically disabled residents beat resident in the stomach, saw that resident became increasingly ill and remained silent and allowed nurses to treat the victim for a gastrointestinal ailment. The victim died from internal bleeding resulting from blunt force trauma to the abdomen.)

The district court in this case appropriately considered the defendant's behavior in the events leading up to Robair's death to be such a gross deviation from a reasonable standard of care that he must have been aware of a serious risk of death or serious bodily injury. We agree with the district court's analysis

No. 11-30877

and that the record supports its fact finding that Williams acted with an intent to do bodily harm. Accordingly, the district court did not err by basing Williams' sentence on the base offense of voluntary manslaughter.

V.

Moore argues that the evidence was insufficient to sustain his conviction on count 2 for aiding and abetting the submission of a false incident report. Count 2 charges Moore and Williams with violating 18 U.S.C. § 1519 and 18 U.S.C. § 2 by obstructing a federal investigation through the submission of a false NOPD incident report and aiding and abetting each other.[5] Only Moore challenges his conviction on this count. Moore argues that the evidence was insufficient to convict him because he did not write the incident report; he provided only a single, true piece of information for the report (the name of Robair's attending physician); as a trainee he had no authority over the report or its content and did not actively participate in the creation of a false report; and he did not act with the requisite criminal intent to obstruct a federal investigation.

To prove that Moore aided and abetted the violation of 18 U.S.C. § 1519, the government was required to prove four elements: (1) the substantive offense occurred (i.e. a person knowingly falsified a document in violation of 18 U.S.C. § 1519); (2) Moore associated with the criminal venture; (3) Moore purposely participated in the criminal venture; and (4) Moore sought by his actions to make the venture successful. *United States v. Gulley*, 526 F.3d 809, 816 (5th Cir. 2008). A conviction for aiding and abetting merely requires that defendant's

---

[5] 18 U.S.C. § 1519 punishes anyone who "knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States or any case filed under title 11, or in relation to or contemplation of any such matter or case."

11

No. 11-30877

association with and participation in the venture was calculated to bring about the venture's success. *United States v. Jaramillo*, 42 F.3d 920, 923 (5th Cir. 1995); *Gulley*, 526 F.3d at 816.

The evidence presented at trial is sufficient to sustain the jury's verdict. First, the underlying substantive offense occurred when Williams submitted a false police report. Second and third, the evidence supports an inference that Moore associated with Williams' creation of the false report and participated with Williams in the process of creating it. The charge against Moore is not that he made the report but that he aided and abetted the deception. Moore was a participant and/or witness to Robair's beating, his transportation to the hospital and the false report to hospital staff regarding the cause of Robair's condition. Moore knew that he and Williams had to write a report regarding the incident. He provided Moore with the name of Robair's doctor for inclusion in the report. Moore's later false statements consistent with the report could be used by the jury to infer that he sought by his actions to make the venture successful by consistently testifying in support of the false statements included in the report.

Finally, Moore argues that he did not have the requisite intent to obstruct justice, implying that there must be a connection between his conduct and the federal matter that his conduct was contemplated to obstruct. This argument is without merit. There is no requirement that a defendant must know that his conduct is impeding or will impede a pending investigation. *United States v. Moyer*, 674 F.3d 192, 208 (3d Cir. 2012) (citation omitted). See also *United States v. Morris*, 404 F. App'x 916, 917 (5th Cir. 2010) (unpublished).

## VI.

Moore also argues that the evidence was insufficient to sustain his conviction on count 3 for making false, material statements to the FBI   Count 3 charged Moore with making a false, material statement to the FBI when he told FBI agent Dalide on two occasions that Williams never hit or kicked Robair.

No. 11-30877

Moore argues that the evidence is insufficient to sustain his conviction because his statements were not material to the FBI's decision to bring the civil rights charges. A material statement is one that has "a natural tendency to influence, or be capable of influencing, the decision of a decisionmaking body to which it was addressed." *United States v. Richardson*, 676 F.3d 491, 505 (5th Cir. 2012) (citation omitted). A material statement need only be capable of influencing an agency decision and may be material even if ignored. *Id.* A statement can be material even if the agency already knew the answers given by the defendant and even if the receiving agent knows they are false. *United States v. Fondren*, 417 F. App'x 327, 336 (4th Cir.), *cert. denied*, 132 S.Ct. 256 (2011); *United States v. White*, 270 F.3d 356, 365 (6th Cir. 2001). Because the statements at issue were that Williams did not kick or beat Robair and the decision the FBI was trying to make was whether to charge Williams with a federal crime for assaulting Robair, Moore's false statement goes to the heart of the crime under investigation and a jury could reasonably have found Moore's statements to be material.

Neither is this count multiplicitous. The false statement in this count is separate and distinct from the charge in count 2 of aiding and abetting the filing of a false police report years earlier. *United States v. Reedy*, 304 F.3d 358, 363 (5th Cir. 2002).

## VII.

Moore argues finally that the district court erred as a matter of law and fact in determining his sentence. We start with U.S.S.G. § 2J1.2(c)(1), the guideline for obstruction of justice. That guideline directs the court to apply U.S.S.G. § 2X3.1 if the offense involved "obstructing the investigation . . . of a criminal offense." Moore argues that the cross reference does not apply to his case because the guideline requires that the obstruction be directed at "the investigation," indicating that the investigation must have existed at the time

13

of the obstruction.  Moore did not raise this objection before the district court.  Therefore, we review it for plain error.  *United States v. Gonzales*, 436 F.3d 560, 583 (5th Cir. 2006).

Plain error is error that is "clear" or "obvious."  *United States v. Olano*, 507 U.S. 725, 734 (1993).  Moore cites no case interpreting U.S.S.G § 2J1.2(c)(1) as requiring that "the investigation" be ongoing before the defendant attempts to obstruct it.  Such a rule would have unusual consequences as applied to this case, when the defendants stipulated that they were both trained by the NOPD that a police officer who uses unnecessary force could be investigated by the FBI and prosecuted in federal court.  The police report in question was filed on the same day as the events and it is reasonable to infer that it was falsified for the purpose of avoiding prosecution.  The FBI in fact opened an investigation two days after the assault.  In addition, 18 U.S.C. § 1519, the underlying offense, does not require that there be an ongoing investigation.  Under these circumstances, Moore has not established that the error, if any, was plain or obvious.  *See United States v. Carson*, 560 F.3d 566 (6th Cir. 2009)(affirming sentence applying cross reference to § 2X3.1 on similar facts but without discussion of whether ongoing investigation is required).

Moore argues next that if the cross reference from U.S.S.G. § 2J1.2(c)(1) applies, the district court should have used the offense of involuntary manslaughter, rather than voluntary manslaughter, to determine the base offense level.  This argument was considered and rejected in section IV of this opinion as to defendant Williams.  The same rationale and conclusion apply to defendant Moore.

Moore argues finally that this sentence was grossly unreasonable and excessive.  His argument boils down to a complaint about the structure of U.S.S.G. § 2J1.2(c)(1), which increased his sentence based on his own conduct assisting in covering up and obstructing justice in the investigation of Williams'

crime.  Unfortunately for Moore, that is how this provision is designed to work. The guideline sentence depends on the seriousness of the underlying crime in which the investigation is obstructed.  The Background section following § 2J1.2 states:

> The specific offense characteristics reflect the more serious forms of obstruction.  Because the conduct covered by this guideline is frequently part of an effort to avoid punishment for an offense that the defendant has committed or to assist another person to escape punishment for an offense, a cross reference to § 2X3.1 (Accessory After the Fact) is provided.  Use of this cross reference will provide an enhanced offense level when the obstruction is in respect to a particularly serious offense, whether such offense was committed by the defendant or another person.

Moore is not charged with the full weight of the offense level for voluntary manslaughter as U.S.S.G. § 2X3.1 provides for a base offense level 6 levels lower than that for the underlying offense.  U.S.S.G. § 2X3.1(a)(1).[6]

In addition, Moore's sentence was within the guidelines range and the district court clearly considered the guidelines range and the sentencing factors in 18 U.S.C. § 3553(a).  Accordingly, the sentence is presumptively reasonable, and  there is no basis on which to override the judge's discretion on this point. *United States v. Newsom*, 515 F.3d 374, 379 (5th Cir. 2008).

## VIII.

For the foregoing reasons, the convictions and sentences of defendants Williams and Moore are affirmed.

AFFIRMED.

---

[6] Moore argues that this sentence was excessive considering his status as a raw trainee dominated by his supervising officer Williams and the fact that his role in Robair's death was peripheral.  We leave to the district court's discretion whether and how to react to mitigating circumstances at sentencing.  Although it denied Moore's request for a sentence below the guidelines range of 70 to 87 months imprisonment, the district court did set Moore's sentence of 70 months at the bottom of the range, concluding that this sentence was appropriate given all the facts it had before it.  We decline to disturb this discretionary call.