# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

December 16, 2013

Lyle W. Cayce
Clerk

No. 12-11274

UNITED STATES OF AMERICA,

Plaintiff – Appellee

v.

GREGORY LASHON THOMAS,

Defendant – Appellant

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:11-CR-168-D-1

Before KING, BENAVIDES, and DENNIS, Circuit Judges.

PER CURIAM:*

A jury convicted Gregory Lashon Thomas of one count of conspiracy to commit mail fraud in violation of 18 U.S.C. § 1349 and three counts of mail fraud and aiding and abetting in violation of 18 U.S.C. §§ 1341 and 1342 in connection with a mortgage-fraud scheme. Thomas appeals several rulings of the district court during trial and at sentencing. For the reasons below, we AFFIRM the district court's judgment.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-11274

## I.     Factual and Procedural Background

In 2008, Gregory Lashon Thomas conspired with Aja D. Crawford and Ernest Ohenekitiwa McMillan to execute a mortgage-fraud scheme that involved fraudulently obtaining mortgages in order to purchase residential properties in and around Dallas, Texas.  On June 21, 2011, Thomas, Crawford, and McMillan were indicted for conspiracy to commit mail fraud in violation of 18 U.S.C. § 1349, and three counts of mail fraud and aiding and abetting under 18 U.S.C. §§ 1341 and 1342 for transactions involving three specific properties.[1]  In addition to the three properties included in the indictment, Thomas was allegedly involved in twenty-six other fraudulent property transactions between 2006 and 2009, all of which operated in a similar manner.  The total amount of fraudulently obtained loans for all of the properties was allegedly $5,842,000, with the actual loss for these properties totaling $2,094,000.  Thomas pled not guilty to all four counts.

Thomas's jury trial commenced on August 27, 2012, and continued for nine days.  The jury found Thomas guilty on all four counts.  The court later sentenced Thomas to concurrent terms of 189 months' imprisonment for each count, followed by concurrent three-year terms of supervised release, and it ordered restitution in the amount of $2,094,000.  Thomas timely appealed.

## II.     Discussion

Thomas appeals the introduction of inadmissible character evidence during trial, the district court's refusal to permit him to examine a juror regarding allegations of misconduct, and the district court's calculation of his offense level at sentencing.  We review each in turn.

---

[1] On August 11, 2011, the government filed a one-count superseding Information naming only Crawford, which charged her with conspiracy to commit mail fraud.  On November 22, 2011, the government filed a one-count superseding Information naming only McMillan, charging him with conspiracy.

2

## A. Inadmissible Evidence

The government called Thomas's co-conspirator, Crawford, to testify to the details of the mortgage-fraud scheme. During cross-examination on the third day of trial, Crawford spontaneously mentioned that Thomas was a convicted criminal. Crawford mentioned that she met McMillan and another individual named Steve at a halfway house, and defense counsel asked for clarification:

> Q: And, again, for the jury, a halfway house is what?
> A: I guess when you do time in federal prison they send you to a halfway house to live there until I guess you can go in the streets.
> Q: These are convicted criminals then you're dealing with?
> A: Yes. Ernest [McMillan] and Greg [Thomas] I didn't know at the time were convicted criminals, yes.

Defense counsel asked to approach the bench regarding the remark, and the court conducted a brief conference. Defense counsel argued that Crawford's testimony violated the court's orders concerning evidence of prior convictions. The parties believed that Crawford misspoke and that she had been talking about McMillan and Steve, not Thomas, so the court asked if defense counsel "could clear that up." Defense counsel did not believe he could because, even if Crawford was referring to Steve, Thomas did have a prior conviction. The court suggested that defense counsel clarify whether Crawford had accidentally referred to Thomas, by asking, "Did you misspeak and did you mean to say that you met Steve and Ernest [McMillan] at the halfway house?" However, defense counsel proceeded with the cross-examination without clarifying Crawford's testimony or asking the question proposed by the court.

Shortly thereafter, defense counsel questioned Crawford regarding her acquaintances, asking her, "How many convicted felons do you know ma'am?" Crawford replied, "I don't know. I mean, I didn't know Greg [Thomas] was a convicted felon[.]" Defense counsel attempted to interrupt Crawford and stop

her testimony, and he ultimately asked if he could approach the bench because he could not "control the witness." The court instructed the witness to answer the questions and refrain from arguing with defense counsel.

Defense counsel continued questioning Crawford, but the court eventually asked counsel to approach the bench before redirect. At that time, defense counsel moved for a mistrial based on the witness's statements, which the government opposed. The court denied the motion, finding that

> The references have been very brief in context. They did not clearly indicate that the defendant had a criminal record. As this occurred early in what is expected to be a two-week trial, and at this point I don't even know if the defendant is going to testify or not. And if he were to testify this would come into evidence.

Defense counsel then requested that the court instruct the jury to disregard any statement that Crawford made about Thomas being a convicted felon. The court believed that an instruction would only highlight the statements to the jury, so it declined to give one. However, at the close of trial, the judge gave the jury a general limiting instruction:

> Additionally, the defendant is on trial here only for the offenses set forth in the indictment. . . .
>
> The defendant is not on trial for any acts, conduct, or offense not alleged in the indictment. . . .
>
> During the trial, you have heard evidence of alleged acts of the defendant that may be similar to those charged in the indictment but that were allegedly committed on other occasions. You must not consider any of this evidence in deciding if the defendant committed the acts charged in the indictment. However, you may consider this evidence for other very limited purposes.

### 1. Standard of review

We review evidentiary rulings for abuse of discretion when the party timely objects to the ruling. *United States v. Simmons*, 470 F.3d 1115, 1124 (5th Cir. 2006). In the absence of a proper objection, we review the evidentiary

ruling only for plain error.  *See* Fed. R. Evid. 103(e); *United States v. Williams*, 620 F.3d 483, 488–89 (5th Cir. 2010).  To prevail under the plain error standard, the objecting party must show "clear or obvious error that affects his substantial rights"; even then, we retain discretion over whether to correct the forfeited error.  *United States v. Redd*, 355 F.3d 866, 874 (5th Cir. 2003) (internal quotation marks omitted).  If the party can show that the error was clear and affected his substantial rights, we will only reverse when that error "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Fullwood*, 342 F.3d 409, 413 (5th Cir. 2003).

### 2.  Analysis

In evaluating the prejudicial effect of a witness's remark, we give considerable weight to the trial judge's assessment.  *United States v. Valles*, 484 F.3d 745, 756 (5th Cir. 2007).  "A prejudicial remark may be rendered harmless by curative instructions to the jury."  *United States v. Nguyen*, 28 F.3d 477, 483 (5th Cir. 1994) (citations omitted).  However, in some instances, the district court may determine that a specific curative instruction is inappropriate because it would merely call further attention to the evidence, and thus be more harmful than the original comment.  *United States v. Paul*, 142 F.3d 836, 844 (5th Cir. 1998).  When the testimony is not highly prejudicial, as here, a general limiting instruction to the jury at the close of trial will cure the admission of erroneous evidence.  *See id.* (holding that the court's instruction that "the Defendants are not on trial for any act or conduct not alleged against him [sic] in the indictment" was sufficient to cure the effect of inadmissible testimony).

Here, Crawford made two spontaneous comments that the government concedes constitute inadmissible character evidence.  Thomas did not object to the statements, but he later moved for a mistrial and for a curative instruction. Since Thomas did not object to Crawford's testimony or appeal the denial of his

motion for a mistrial, we now consider whether the introduction of the testimony and the court's decision not to provide a specific curative instruction to the jury amounts to plain error that seriously affected the integrity and fairness of Thomas's trial.

Contrary to Thomas's assertions, Crawford's testimony was not highly prejudicial. We have previously found under the abuse of discretion standard, which is higher than a plain error standard, that "[t]he inadvertent and fleeting reference to [the defendant's] prior incarceration could not have had a substantial impact on the jury, especially considering all of the testimony the jury heard over the course of [the] trial, which lasted almost two weeks." *United States v. Naranjo*, 309 F. App'x 859, 867–68 (5th Cir. 2009) (unpublished); *see also United States v. Elashyi*, 554 F.3d 480, 507–08 (5th Cir. 2008) (holding a "prejudicial" tape recording did not warrant a mistrial because it was short and presented during a two-week trial); *United States v. Harris*, 205 F. App'x 230, 231–32 (5th Cir. 2006) (unpublished) (holding that there was no significant likelihood that two spontaneous comments by a witness containing inadmissible evidence had a substantial impact on the jury and deferring to the district court's assessment of the testimony's prejudicial effect). Although Thomas makes much of the length of the jury deliberations and the fact that Crawford's testimony was re-read to the jury, these factors do not support a finding that Crawford's two brief statements during the course of a nine-day trial were so harmful as to seriously affect the fairness of the proceeding.

Likewise, the district court did not err when it declined to give a specific curative instruction. The district court is in the best position to evaluate the prejudicial effect of testimony, and it determined that the testimony's impact was minimal and that a curative instruction would only highlight the issue to the jury. In lieu of providing a specific instruction, the court gave a general

limiting instruction to the jury at the close of evidence, which we have held is a sufficient means to neutralize any prejudice resulting from inadmissible testimony. *Paul*, 142 F.3d at 844. Thomas argues that this general instruction, which was embedded in nineteen pages of jury instructions, is insufficient to overcome Crawford's statements. However, we presume that jurors follow all instructions provided to them, *see id.*, so the length of the jury instructions does not overcome a single instruction's curative value. Given the nature and circumstances surrounding the testimony and the decision of the court to provide a general curative instruction, we find no plain error and affirm the decision of the district court.

**B. Juror Misconduct[2]**

On the first day of trial, the government called Gail Andrich to testify regarding the process of obtaining a mortgage loan, the information lenders consider in a loan application, and the loan provided for one of the properties named in the indictment. During her testimony, she recognized one of the jurors as someone with whom she had briefly interacted prior to trial. She informed the government of this encounter after the close of the first day, and the government disclosed the contact to the court the next morning. Before the court, but not the jury, the government and defense counsel questioned Andrich about her interaction with the juror. Andrich stated that she had met one of the jurors during the lunch break, prior to his empanelment. Andrich had purchased lunch at a McDonald's restaurant that was located near the courthouse. When she walked back to the courthouse in order to sit outside and eat her lunch, she was followed by several homeless individuals. The juror

---

[2] The parties in their briefing classify this issue as a juror misconduct issue. Actually, at the time of the events described, the venire person had not yet been empanelled. Since the parties have analyzed the issue as one of juror misconduct, we adopt the same analysis without expressing an opinion as to whether that framework is correct.

was also sitting outside the courthouse, and Andrich made a comment to him that she must be a "magnet." She sat alone, but the juror moved closer to her; Andrich testified that it was as if he was trying to "protect" her. Andrich offered him a piece of gum, and the two made "small talk." She testified that he was not wearing anything to indicate that he was a potential juror. The interaction lasted for approximately ten minutes.

While inside the McDonald's, Andrich had purchased lunch for three of the homeless individuals and gave money to two others. Andrich did not believe that the juror had witnessed any of her charitable acts. She also testified that she did not think that the juror had followed her or that he was attracted to her. She had no other contact with the juror, nor did she plan to have further contact with him.

After interviewing the witness, defense counsel asked to call the juror to testify about his conversation with Andrich in order to determine whether he was attracted to her. The court denied the request, believing that interviewing the juror would "make it a bigger issue with the juror than it would otherwise be." The court explained that "[t]he conduct that [it] might be most concerned about, that is [the juror's] viewing a witness as being generous to homeless people," was not an issue because it found that Andrich's testimony was credible and that her generosity occurred at a "separate location." The court concluded that the interaction would not impair the juror's ability to be fair and impartial and proceeded with the trial.

### 1. Standard of Review

A district court's response to alleged juror misconduct is reviewed for abuse of discretion. *United States v. Ebron*, 683 F.3d 105, 125 (5th Cir. 2012). "A trial court abuses its discretion when its ruling is based on an erroneous view of the law or a clearly erroneous assessment of the evidence." *United States v. Yanez Sosa*, 513 F.3d 194, 200 (5th Cir. 2008) (citation omitted).

No. 12-11274

### 2. Analysis

"[I]n evaluating a claim of juror misconduct, the law [] presumes that the jury is impartial and the burden rests on the defendant to show otherwise." *United States v. York*, 600 F.3d 347, 358 (5th Cir. 2010). Moreover, "a district court, based on its unique perspective at the scene, is in a far superior position than [the appellate court] to appropriately consider allegations of juror misconduct, both during trial and during deliberations." *Ebron*, 683 F.3d at 126 (citation omitted). Accordingly, the district court "enjoy[s] wide discretion to determine the proper scope of an investigation into whether just cause to dismiss a juror exists." *United States v. Edwards*, 303 F.3d 606, 634 (5th Cir. 2002). When the district court makes a reasonable factual determination that a juror can decide the case impartially, the court has not abused its discretion. *Cf. United States v. Nieto*, 721 F.3d 357, 370 (5th Cir. 2013).

Thomas argues that the district court erred in denying him the opportunity to question the juror, since only the juror would be able to confirm whether he witnessed Andrich's charity. We disagree. Upon learning about the contact, the district court promptly addressed the situation by interviewing the witness. Andrich testified that her generosity occurred at one location and that she spoke with the juror at a separate location; the district court determined that Andrich was credible and that interviewing the juror would only inflame the matter. Thomas offers no evidence to support a finding to the contrary, other than to argue that only the juror could confirm with certainty whether he had seen Andrich's generosity. In light of the facts and the testimony, we find that the district court did not abuse its discretion in declining to call the juror for questioning.

### C. Sentencing

Thomas appeals the district court's calculation of his offense level at sentencing, arguing that it erred in: (1) determining the "actual loss" caused

by his crimes; (2) declining to apply a two-level reduction for acceptance of responsibility; and (3) applying a two-level enhancement for obstruction of justice.[3]

### 1. Standard of Review

The district court's legal interpretation of the United States Sentencing Guidelines Manual ("Guidelines") is a question of law and is reviewed de novo. *United States v. Moore*, 708 F.3d 639, 645 (5th Cir. 2013). The court's factual findings are reviewed for clear error. *United States v. Cisneros-Gutierrez*, 517 F.3d 751, 764 (5th Cir. 2008).

### 2. Relevant Conduct and Loss Calculation

Under the Guidelines, if the defendant is convicted of mail fraud, he or she receives an enhancement based on the monetary loss caused by the crime. *See* U.S. Sentencing Guidelines Manual § 2B1.1(b). When the loss is more than $400,000, but not more than $1,000,000, the defendant receives a fourteen-level enhancement; for losses above $1,000,000, but not more than $2,500,000, the defendant receives a sixteen-level enhancement. *Id.* § 2B1.1(b)(1)(H) & (I). The commentary to the Guidelines explains that the loss caused by the crime is the greater of actual loss or intended loss, where actual loss is the "reasonably foreseeable pecuniary harm that resulted from the offense." *Id.* § 2B1.1 cmt. n.3(A). The calculation of loss need not be precise; the sentencing judge "need only make a reasonable estimate of the loss." *Id.* § 2B1.1 cmt. n.3(C). The court is not limited to the losses resulting from the specific conduct for which the defendant was convicted, and it may also include "relevant conduct" in its calculation. *United States v. Randall*, 157 F.3d 328, 331 (5th

---

[3] Because a reduction of his offense level by only one point would have resulted in a lower sentence, Thomas also argues that these errors were not harmless and asks the panel to vacate his sentence and remand for re-sentencing. However, since we find that the district court did not commit error at sentencing, we need not consider his final argument.

Cir. 1998) (citing U.S. Sentencing Guidelines Manual § 1B1.3).   Relevant conduct includes offenses that are part of a common scheme or plan that relates to the underlying offense.   *See* U.S. Sentencing Guidelines Manual § 1B1.3(a)(1)(B).   "For two or more offenses to constitute part of a common scheme or plan, they must be substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar *modus operandi.*"  *Id.* § 1B1.3 cmt. n.9(A).

The court relied on the presentence report ("PSR") to conclude that the seventeen sales to which Thomas objects constituted "relevant conduct," and it included those properties in the loss calculation.   The PSR is presumed reliable, and the sentencing court may rely on the PSR and adopt it in the absence of rebuttal evidence. *United States v. Alaniz*, 726 F.3d 586, 619 (5th Cir. 2013).   The burden is on the defendant to show that the information in the PSR "is materially untrue."   *Id.* (citation omitted).   Thomas did not provide evidence to the district court to support his objection to the inclusion of the seventeen properties in the PSR, and he cannot overcome his burden to show that the PSR was erroneous with objections alone.   *United States v. Huerta*, 182 F.3d 361, 364 (5th Cir. 1999).   On appeal, he rebuts the PSR by arguing that some of the conduct occurred two years prior to the charged offenses. However, this oversimplifies the facts, as the PSR shows that the totality of the relevant conduct, i.e., fraudulently obtaining mortgage loans, occurred consistently throughout 2006, 2007, 2008, and 2009.

Moreover, the PSR plainly describes its methodology for calculating loss, *see* PSR ¶ 28 ("The loss amounts are based on the original loan amount minus the money that was recouped following the sale of the property"), so Thomas's assertion that there is no explanation for the loss calculation is patently wrong. We have previously approved this same method in other mortgage fraud cases. *See United States v. Murray*, 648 F.3d 251, 255 (5th Cir. 2011); *United States*

*v. Goss*, 549 F.3d 1013, 1017 (5th Cir. 2008).  Thus, there is no legal error in the court's loss calculation.[4]

### 3.  Acceptance of Responsibility

The Guidelines provide a two-level reduction when "the defendant clearly demonstrates acceptance of responsibility for his offense." U.S. Sentencing Guidelines Manual § 3E1.1(a).  Section 3E1.1's application notes explain, "[t]his adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse." *Id.* § 3E1.1 cmt. n.2.  There is a narrow exception—the reduction is appropriate if the defendant goes to trial only to preserve issues that do not relate to factual guilt, such as a constitutional challenge to the statute. *Id.*

Thomas appeals the district court's refusal to apply the reduction for acceptance of responsibility on the ground that he provided information to the FBI about another individual wanted for a similar crime.[5]  Thomas did not raise this objection to the district court, so the standard of review is for plain error. *United States v. Mondragon-Santiago*, 564 F.3d 357, 361 (5th Cir. 2009).

Thomas contested his guilt and went to trial.  At the sentencing hearing, the district court commented that it questioned whether Thomas was truly remorseful based on the statements he made at the hearing.  While Thomas did provide some information to the FBI concerning the criminal actions of

---

[4] Thomas also contends that the district court should have weighed the impact of the "housing bubble" in determining loss. This argument is meritless.  First, any such consideration would be speculative.  Second, the Guidelines make it clear that the calculations need not be precise, only reasonable, and holding Thomas accountable for the actual amount each lender lost in each transaction is reasonable.

[5] Thomas also claims that he is being "penalized" for exercising his constitutional right to a jury trial.  His argument is meritless.  Thomas's sentence was not enhanced because he chose to go to trial.  Rather, he was denied a reduction because he has not accepted responsibility for his crime.

another individual, this does not mitigate the fact that Thomas protested his own guilt, as was his right.  Thus, we find no plain error in the district court's refusal to apply this reduction.

### 4.  Obstruction of Justice Enhancement

The Guidelines authorize a two-level increase in offense level for obstruction of justice "when a defendant engages in conduct which 'obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense.'" *United States v. Lowder*, 148 F.3d 548, 552 (5th Cir. 1998) (citations omitted).

The PSR states that in 2010, Thomas contacted Crawford and told her not to speak to the FBI and, if she did, to tell them that the information in the loan packages came from McMillan, which was false.  In March 2011, he again advised her not to speak with the FBI.  After Crawford was interviewed by the FBI on March 29, 2011, Thomas visited Crawford and again told her not to say anything to the FBI.  Several days later, he contacted her once more with the same warning.  After Thomas and Crawford were indicted, he sent a Facebook message to Crawford calling her a "dirty rat" and accusing her of lying.  Based on these incidents, the district court applied the obstruction of justice enhancement at sentencing.

Thomas challenges the factual basis of the district court's decision by attacking Crawford's credibility as well as the court's legal interpretation of the Obstruction of Justice Guideline.  Thomas's factual challenge is without merit.    The  district  court  may  rely  on  the  PSR  in  making  its  factual determinations.  *Alaniz*, 726 F.3d at 619.  Thomas did not present evidence to rebut the PSR's findings that he had engaged in aforementioned interactions prior to his arrest; rather, he makes the blanket assertion that Crawford is not credible.  This does not demonstrate that the court's reliance on the PSR was unreasonable.  Thus, the court's factual findings regarding Thomas's actions

are presumed correct.  Turning the court's application of the Guideline, the district court properly concluded that Thomas engaged in obstruction of justice in light of his repeated instructions to Crawford not to cooperate with the FBI and his direction to make false statements.  Thus, we find no legal error.

## III.   Conclusion

Because Thomas has not demonstrated any error on the part of the district court, we AFFIRM the judgment of the district court.