# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-51030

United States Court of Appeals
Fifth Circuit

**FILED**
March 2, 2020

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

GABRIEL ALEJANDRO ALVARADO-PALACIO,

Defendant - Appellant

Appeal from the United States District Court
for the Western District of Texas

Before CLEMENT, GRAVES, and OLDHAM, Circuit Judges.[*]

JAMES E. GRAVES, Jr., Circuit Judge:

Defendant-Appellant Gabriel Alejandro Alvarado-Palacio ("Alvarado-Palacio") asks this court to reverse the district court's denial of his motion to suppress based on a determination that he had voluntarily, knowingly and intelligently waived his *Miranda* rights before providing officers with incriminating post-arrest statements. *See Miranda v. Arizona*, 384 U.S. 436 (1966). After the denial of the motion to suppress, the parties had a bench trial based on jointly stipulated facts. Alvarado-Palacio was subsequently found guilty and is currently serving his federal prison sentence. For the reasons set forth below, we affirm.

---

[*] Judge Oldham concurs in the judgment only.

No. 17-51030

## I. Facts and Procedural History

### A.

On March 29, 2017, Alvarado-Palacio—a Mexican citizen—attempted to drive a 2004 Nissan containing 9.98 kilograms of methamphetamine into the United States. He was detained at a port of entry in El Paso, Texas, where Customs and Border Protection ("CBP") agents found 17 bundles of methamphetamine following a secondary inspection of the car. He was arrested and escorted to a holding cell for questioning.

Alvarado-Palacio was interrogated by Homeland Security Investigations ("HSI") Special Agents Carlos Hernandez ("Hernandez") and Oscar Flores ("Flores") (collectively, the "agents"). The interrogation was video recorded. Hernandez read Alvarado-Palacio his *Miranda* rights, in Spanish, informing Alvarado-Palacio that (1) he has a right to remain silent; (2) anything that he says may be used against him in court or other judicial process; (3) he may consult with an attorney before making a declaration or answering any question; (4) if he cannot afford an attorney, an attorney will be assigned to him before any interrogation or when he requests one; and (5) if he chose to answer questions, he can stop the interrogation at any moment or stop to consult with an attorney.[1] Hernandez asked Alvarado-Palacio, in Spanish, if he understood his rights. Alvarado-Palacio said yes.

Next, Hernandez informed Alvarado-Palacio that the interrogation was being recorded as "protection for everyone" and that Hernandez needed Alvarado-Palacio to include his name, signature, and date on a Spanish version of a Department of Homeland Security form including a "Declaration of [*Miranda*] Rights" and "Waiver." Flores asked Alvarado-Palacio, "You

---

[1] A phone ring tone momentarily interrupts Hernandez as he reads the last sentence, but Hernandez goes back to reiterate that if Alvarado-Palacio decides to answer questions, he has the right to stop at any moment and to stop and consult with an attorney.

understand your rights? And you will, we will be talking to you. We have a few questions for you. Is that ok? Is that ok with you?" Alvarado-Palacio responded "Yes, I am ok" as Hernandez slid the form toward him on the file cabinet indicating where to sign his name, signature, and date. While Alvarado-Palacio picked up the pen to sign, Flores informed him that he can read the rights again if he would like. Alvarado-Palacio filled out the form. As Alvarado-Palacio began reviewing the form, Hernandez attempted to take the form. Alvarado-Palacio took the form back and looked at it for approximately 15 seconds, appearing to read its contents and repeat some of it under his breath.

After Alvarado-Palacio was done reading, Hernandez asked Alvarado-Palacio if he understood his rights. Alvarado-Palacio handed the form to Hernandez and asked, "Yes, that I may have an attorney, it says?" Hernandez answered while holding the signed rights and waiver form, "Yes, you may have an attorney, but right now is when we can speak with you." Alvarado-Palacio responded, "Ah, ok." Alvarado-Palacio subsequently gave the agents a confession admitting that he knew the drugs were in the car, even though he did not know what kind of drugs. Alvarado-Palacio also admitted that he was offered $800 to take the drugs to a delivery point in the United States.

**B.**

The Government charged Alvarado-Palacio with importing and possessing with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(viii) and 21 U.S.C. §§ 952(a) and 960(a)(1), (b)(1)(H). Before trial, Alvarado-Palacio filed the motion to suppress his statements and confession, arguing that he did not voluntarily and knowingly waive his *Miranda* rights because Hernandez mischaracterized his right to an attorney.

No. 17-51030

Relying on the interrogation video recording and the uncertified English-Spanish translated transcript "as an aid," the district court found that Alvarado-Palacio was subject to a custodial interrogation and "knowingly, intelligently and voluntarily waived those rights and agreed to speak to the agents." The district court also determined that Alvarado-Palacio stated rather than asked for clarification when he said, "That I can have an attorney, it says." The district court later found Alvarado-Palacio guilty of the charged offenses after a bench trial based on jointly stipulated facts. The district court sentenced Alvarado-Palacio to 46 months' imprisonment and five years of supervised release. Alvarado-Palacio appealed, challenging only the denial of the motion to suppress his statements and confession made during the interrogation. We have jurisdiction over this appeal pursuant to 28 U.S.C. §1291.

## II. Standards of Review

In reviewing a ruling on a motion to suppress a confession, "we give credence to the credibility choices and fact finding by the district court unless they are clearly erroneous," but "the ultimate issue of voluntariness is a legal question reviewed de novo." *United States v. Mullin*, 178 F.3d 334, 341 (5th Cir. 1999) (citing *United States v. Restrepo*, 994 F.2d 173, 183 (5th Cir. 1993)).

We must defer to the district court's factual findings unless we are "left with a definite and firm conviction that a mistake has been committed." *United States v. Scroggins*, 599 F.3d 433, 440 (5th Cir. 2010) (citing *United States v. Hernandez*, 279 F.3d 302, 306 (5th Cir. 2002)). The evidence must be viewed in the light most favorable to the prior prevailing party—in this case, the Government. *United States v. Pack*, 612 F.3d 341, 347 (5th Cir.) (citing *United States v. Cantu*, 230 F.3d 148, 150 (5th Cir. 2000)), *opinion modified on denial of reh'g*, 622 F.3d 383 (5th Cir. 2010).

4

No. 17-51030

## III. Analysis

### A.

Law enforcement must inform a suspect of his *Miranda* rights, but a suspect can waive those rights if the waiver is made voluntarily, knowingly and intelligently. *Moran v. Burbine*, 475 U.S. 412, 421 (1986) (citing *Miranda*, 384 U.S. at 444, 475). Accordingly, courts consider both the voluntariness inquiry and the knowing inquiry. *Id.* Alvarado-Palacio argues that the waiver of his *Miranda* rights was invalid because the agents misrepresented his right to counsel.

For a waiver of *Miranda* rights to be voluntary, it must be "the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Id.* "[T]rickery or deceit is only prohibited to the extent it deprives the suspect 'of knowledge essential to his ability to understand the nature of his rights and the consequences of abandoning them.'" *Soffar v. Cockrell*, 300 F.3d 588, 596 (5th Cir. 2002) (en banc) (quoting *Burbine*, 475 U.S. at 424). "The voluntariness determination is made on a case-by-case basis and is viewed under the totality of the circumstances surrounding the interrogation." *United States v. Cardenas,* 410 F.3d 287, 293 (5th Cir. 2005) (citing *United States v. Reynolds*, 367 F.3d 294, 298 (5th Cir. 2004)).

The facts here are rather straightforward—the agents informed Alvarado-Palacio of his *Miranda* rights, including his right to consult with an attorney before or during any interrogation; Alvarado-Palacio indicated he understood his rights; Hernandez slid over a waiver and Flores mentioned that Alvarado-Palacio could read the rights again; Alvarado-Palacio wrote his name, signature, and date on a Spanish form that included his *Miranda* rights *and* a waiver of these rights; Alvarado-Palacio took a moment to review the form; the agents asked him if he understood the form and Alvarado-Palacio responded, "Yes, that I may have an attorney, it says?"; Hernandez answered

5

while holding the rights and waiver form, "Yes you may have an attorney, but right now is when we can speak with you"; and Alvarado-Palacio responded, "Ah ok."  Nothing from the record indicates that Alvarado-Palacio did not make a free and deliberate choice to waive his right to counsel.  Accordingly, this appeal hinges on the question of whether there was a knowing waiver. *See Soffar*, 300 F.3d at 592–93 (noting that the waiver decision must be made with "full awareness of the right being abandoned" and the consequences of doing so (quoting *Burbine*, 475 U.S. at 421)).

## B.

A signed waiver form, though not conclusive, is "usually strong proof" of a knowing and voluntary waiver. *North Carolina v. Butler*, 441 U.S. 369, 373 (1979).  Both parties agree that agent Flores told Alvarado-Palacio that he could read the document and that Alvarado-Palacio reviewed the document after signing it. *See Garcia v. Stephens*, 793 F.3d 513, 522 (5th Cir. 2015) ("[W]aivers may be direct or, in some instances, they may be clearly inferred from the actions and words of the person interrogated" (internal citation and quotation omitted));  *see also United States v. Martinez*, 588 F.2d 1227, 1235 (9th Cir. 1978) (finding intelligent waiver even though suspect "testified at the hearing that he had not read the form at the time he signed it, but two government witnesses said he did").

Examining the totality of circumstances here—including Alvarado-Palacio's initial affirmation that he understood his right to an attorney prior to or during interrogation, the video of him signing the Spanish translated waiver, his second affirmation that he understood his rights, and his agreement to speak with the agents—the district court's finding that Alvarado-Palacio knew and understood his rights is not clearly erroneous. *See United States v. Venegas,* 594 F. App'x 822, 828 (5th Cir. 2014) (per curiam) (finding

that a suspect may validly waive his or her *Miranda* rights even when the interrogating officer administers a written warning alone).

Alvarado-Palacio contends that the agents misrepresented when he could seek counsel. The agents asked Alvarado-Palacio, for the third time, if he understood his rights. In response, Alvarado-Palacio asked a question or made a statement. Whether a statement or a question, the result in this case flows from the circumstances which preceded Alvarado-Palacio's response. Prior to this exchange, the agents told Alvarado-Palacio at the start of the recording he had the right to an attorney before and during any interrogation, Alvarado-Palacio received a written Spanish waiver that he signed, he answered affirmatively about understanding the form, and Alvarado-Palacio said he was "ok" with speaking with the agents. *See Colorado v. Spring*, 479 U.S. 564, 574 (1987) (holding that suspect need not "know and understand every possible consequence of a waiver"). Moreover, we have held that an officer's misleading statement does not "invalidate[ ] the multiple waivers [a defendant] had given *prior* to the interview." *Soffar,* 300 F.3d at 596 (noting that the defendant "was well aware of his rights because he had been given numerous Miranda warnings and had waived his rights multiple times prior to his interview" with officers). Our sister courts have similarly rejected *Miranda* arguments from detained individuals who asked officers even more direct questions about the right to counsel. *See, e.g., United States v. Bezanson-Perkins*, 390 F.3d 34 (1st Cir. 2004) (finding valid *Miranda* waiver and no coercion where officer stated that there was no immediate access to an attorney and explained that the defendant would have to hire his own lawyer); *United States v. Shabaz,* 579 F.3d 815 (7th Cir. 2009) (finding valid *Miranda* waiver where officer brought suspect to interview room before answering suspect's question about access to an attorney).

No. 17-51030

At most, Alvarado-Palacio can protest that the agents' failure to go back to reiterate his *Miranda* rights is "objectionable as a matter of ethics." *Burbine*, 475 U.S. at 423-24.  However, the Constitution does not "require that the police supply a suspect with a flow of information to help him calibrate his self-interest in deciding whether to speak or stand by his rights."  *Id.* at 422.  Absent a definite conviction that a mistake has been made, we must "giv[e] due deference to the credibility determinations of the district court" and "[v]iew[ ] the evidence in the light most favorable to the government." *United States v. Solis,* 299 F.3d 420, 437 (5th Cir. 2002).  After agents verbally informed Alvarado-Palacio of his *Miranda* rights, the "waiver signed by [Alvarado-Palacio] acknowledged that his statements could be used against him," which made his subsequent statements not "constitutionally involuntary." *United States v. Tapp,* 812 F.2d 177, 179 (5th Cir. 1987).

We also have held that a failure to "pay attention to the waiver form [a suspect] signed" is insufficient to show that a waiver was made involuntarily or unknowingly.  *United States v. Guanespen-Portillo*, 514 F.3d 393, 404 (5th Cir. 2008) (finding that reading a waiver form and affirming one's understanding of that form without coercive action demonstrates a valid waiver).  After Alvarado-Palacio signed the rights and waiver form, agents asked him if he understood his rights.  Alvarado gave an ambiguous reply, "that I can have an attorney, it says?" but then clearly stated "Ah ok" when agents informed him that they were going to speak with him.  We cannot view this exchange in a vacuum.  *De La Rosa v. State of Texas*, 743 F.2d 299, 302 (5th Cir. 1984) ("We cannot accept the position that would have us ignore the repeated full and accurate warnings to focus only on the remark that appointing an attorney would take some time.").  Just moments before, the agents verbally told Alvarado-Palacio about his *Miranda* rights and asked if he understood.  He answered yes.  The agents also asked if Alvarado-Palacio

8

understood his rights and would be okay if they asked him a few questions. He answered that he was ok.

Finally, Alvarado-Palacio's reliance on *California v. Prysock*, 453 U.S. 355, 357 (1981) is misplaced because *Prysock* involved warnings that did "not apprise the accused of his right to have an attorney present if he chose to answer questions." *Duckworth v. Eagan*, 492 U.S. 195, 205 (1989) (finding that *Miranda* warnings were not defective because two sentences described the right to counsel before interrogation and the right to stop answering questions at any time to speak with a lawyer). Moreover, "[w]e have previously held that 'there is no requirement that an accused be continually reminded of his rights once he has intelligently waived them.'" *Biddy v. Diamond,* 516 F.2d 118, 122 (5th Cir. 1975) (quoting *United States v. Anthony*, 474 F.2d 770, 773 (5th Cir. 1973)). As indicated in the video, the agents first verbally informed Alvarado-Palacio that he could have an attorney before or during any interrogation, and those rights and waiver were set out on the Spanish translated form. While holding Alvarado-Palacio's signed waiver, agent Hernandez informed Alvarado-Palacio that they would speak with him and he replied, "Ah ok." Accordingly, the video indicates that the agents "fully advise[d] [Alvarado-Palacio] of his right to appointed counsel before such interrogation" and fails to show that the agents' "reference to appointed counsel was linked to a future point in time after police interrogation." *Prysock*, 453 U.S. at 360.

## IV. Conclusion

Viewing the evidence in the light most favorable to the Government and with deference to the district court's factual finding, we find no clear error in the district court's denial of the motion to suppress Alvarado-Palacio's statements and confession made during the interrogation.

AFFIRMED.